366 So.2d 1340 (1978)
STATE of Louisiana
v.
Christopher McALLISTER.
No. 62429.
Supreme Court of Louisiana.
December 15, 1978.
*1341 Leo J. Berggreen, Stuart Thomson, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara B. Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Warren Hebert, Marilyn C. Castle, Asst. Dist. Attys., for plaintiff-appellee.
CALOGERO, Justice.
Christopher McAllister and David Rachal were charged by grand jury indictment with first degree murder in violation of R.S. 14:30. On June 20, 1977, they were tried jointly. That jury found Rachal guilty of manslaughter but could not reach a verdict as to McAllister. On November 8, 1977, defendant McAllister was again tried for first degree murder and was found guilty of manslaughter. He was then charged under R.S. 15:529.1, adjudged to be a third offender, and sentenced to serve thirty-two years. On this appeal he relies on nine assignments of error for reversal of his conviction and sentence.
This prosecution resulted from events which transpired on the evening of December 27, 1976. David Rachal and defendant were at the Rack Lounge in Baton Rouge when James Fitzhugh, Jr. allegedly made disparaging remarks about Rachal's wife. Rachal, defendant McAllister and a third person left the lounge and drove to defendant's car where Rachal and defendant got into the defendant's car and emerged shortly thereafter with a gun. Together the three men returned to the Rack Lounge. When Fitzhugh saw Rachal re-enter the bar, he again made disparaging remarks to Rachal. Rachal then shot Fitzhugh several times, killing him. The state proceeded against the defendant on the theory that he was a principal who aided, abetted, counseled or procured David Rachal to commit a homicide.

*1342 ASSIGNMENT OF ERROR NO. 1
By this assignment defendant contends that the trial court erred in denying his motion to quash. In brief, he argues that because David Rachal, the actual perpetrator of the homicide was found guilty of manslaughter and was by that verdict acquitted of first degree murder, he as a principal could be charged with no higher degree of homicide than manslaughter.
To support his argument, defendant relies primarily on State v. St. Philip, 169 La. 468, 125 So. 451 (1929) a case decided before Louisiana explicitly abolished the common law distinctions between principals and accessories before the fact. That case held that the prior acquittal of the person charged with the actual burning of a home prevented the state from charging a second defendant with aiding, counseling, or procuring the arson. Defendant argues that under St. Philip the acquittal of David Rachal of first degree murder prevents the state from charging him, McAllister, with first degree murder and that the only crime for which he could be tried as a principal is manslaughter.
Although the result reached in St. Philip seems to support defendant's argument, the holding rests on common law principles no longer accepted in Louisiana. Prior to Acts 1932, No. 120, §§ 1, 2, Louisiana adhered to the distinction made by common law between principals and accessories before the fact. Those who personally committed a felony and those present who aided, assisted, or encouraged the commission of the felony were classified as principals while those who assisted or encouraged but were not present were accessories before the fact. State v. Maxent, 10 La.Ann. 743 (1855); State v. Haines, 51 La.Ann. 731, 25 So. 372 (1899).
An important procedural rule developed from this distinction. An accessory before the fact could not be convicted unless the principal was found guilty before the accessory's trial or was convicted in a joint trial with the accessory. An accessory likewise could not be tried in advance of a principal even if the principal were beyond prosecution. The prosecution of a principal who was present and who aided and abetted the crime was not similarly limited. Such a principal could be tried and convicted even though the actual perpetrator had not yet been prosecuted. Indeed even if the actual perpetrator were acquitted, the principal could be tried and convicted. See Reporter's Comment to R.S. 14:24; LaFave and Scott, Criminal Law, § 63, at 500 (Hornbook ed. 1972).
Louisiana's first legislative attempts to eliminate the common law distinctions were Section 972 of the Revised Statutes of 1870 which provided identical punishments for accessories before the fact and principals, and Section 1058 of the Revised Statutes of 1870 which allowed accessories to be tried irrespective of whether the principal was or would be brought to justice. See State v. Accardo, 129 La. 666, 56 So. 631 (1911). Subsequently, Article 238 of the Code of Criminal Procedure expressly provided that accessories before the fact could be indicted as principals. As a result of the Court's declaring Article 238 unconstitutional in State v. Rodosta, 173 La. 623, 138 So. 124 (1931), the legislature by Acts 1932, No. 120, §§ 1, 2 expressly abolished all distinctions between accessories and principals.
State v. St. Philip was decided in 1928 when accessories before the fact could be indicted as principals but before the legislature explicitly abolished the distinctions between the two classes. The holding in St. Philip, that the defendant could not be charged with a crime for which the actual perpetrator had been acquitted, results from the fact that the defendant was an accessory before the fact who was indicted as a principal and who, as an accessory before the fact, was entitled to the procedural limitation requiring the prior conviction of the actual perpetrator.
By Acts 1932, No. 120 §§ 1, 2, the Louisiana legislature abolished all distinctions between accessories before the fact and principals to provide that "all persons concerned in the commission of a crime . . . are principals." See R.S. 14:24. The procedural *1343 rules which followed these classifications are likewise eliminated by the statute. See State v. Farley, 105 Ariz. 526, 468 P.2d 379 (1970) and People v. Smith, 271 Mich. 553, 260 N.W. 911 (1935) in which statutes nearly identical to R.S. 14:24 have been held to allow conviction of a principal when the actual perpetrator of the crime has been acquitted. Consequently, David Rachal's acquittal of first degree murder implicit in his conviction for manslaughter does not prevent the defendant's being charged with the crime of first degree murder.
In a related argument, defendant contends that because one who aids and abets the commission of a crime is to be held equally as guilty as the perpetrator, he can not be charged with a higher degree of crime than that of which David Rachal was convicted. His crime, he argues, can only be as great as that of the actual perpetrator.
The fact that the jury at the first trial found that Rachal killed Fitzhugh in the "heat of passion" does not prevent the state from charging defendant with first degree murder. One who aids and abets in the commission of a crime may be charged and convicted with a higher or lower degree of crime depending on the mental element proved at trial. Oaks v. Patterson, 278 F.Supp. 703 (D.Colo.1968). The actual perpetrator of the crime may act in hot blood, in which case he would be guilty of manslaughter, while the instigator may act cooly and thus be guilty of murder. See Wharton's Criminal Law §§ 269, 276 (12 ed.). In State v. Peterson, 290 So.2d 307 (La.1974), this Court held that manslaughter was a responsive verdict to a charge of murder and observed that the presence of passion is "in the nature of a defense." While "passion" may be a mitigating element for the actual perpetrator and serve as a defense to first degree murder for him, it may not be asserted by a principal who lacks the requisite mitigating element. He may be charged and even convicted of murder. In this case, of course, defendant, like Rachal in the earlier trial, was convicted only of manslaughter.
The trial court did not err in denying defendant's motion to quash the first degree murder charge.

ASSIGNMENT OF ERROR NO. 2
Defendant submits that the trial court erred in denying his motion to quash on the grounds that R.S. 14:24 is unconstitutional. He claims that it is vague and overbroad, and denies equal protection and due process.
Louisiana Revised Statute 14:24 provides:
"All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals."
Defendant's vagueness and overbreadth claim results from a simple misreading of the statute. He claims that the statute allows the prosecution of anyone "concerned" with a crime, meaning anyone "affected, disturbed, troubled or interested" by a crime. This argument ignores the fact that the statute qualifies "concerned in the commission of a crime" with the following language: ". . . whether [the principals] directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime . . . ." A challenge for overbreadth and vagueness therefore lacks merit. R.S. 14:24 is not a statute whose meaning "`men of common intelligence must necessarily guess at . . . and differ as to its application . . ."' Connick v. Lucky Pierre's et al., 331 So.2d 431 (La.1976).
Defendant next claims that the statute denies equal protection in that by virtue of the content of R.S. 14:24 and R.S. 14:30 a jury will be caused to look at the specific intent of the person who directly committed the act constituting the offense but not the specific intent of one accused of aiding, abetting, counseling or procuring. He complains specifically that R.S. 14:24 does not on its face require specific intent. This of *1344 course is true, but the argument ignores the fact that a person is not charged with violating R.S. 14:24. That statute simply defines principals (including both the perpetrator and the person who aids, abets, counsels or procures) who may be charged with committing a substantive crime, in this case R.S. 14:30. That latter statute (with which this defendant was charged) requires proof of specific intent, and such a charge was in fact read to the jury. There is no merit to defendant's equal protection and due process arguments.
The assignments lack merit.

ASSIGNMENTS OF ERROR NOS. 3, 4, 5, 6, 7, 8 AND 9
The remaining assignments of error we determine are without merit. Defendant's complaint that a juror or jurors saw him handcuffed to his chief witness and other prisoners all of whom (except defendant) were wearing prison clothes is non-meritorious in light of his failure to make a record demonstrating the actual occurrence and on the strength thereof to convince us that he was substantially prejudiced. (Assignment of Error No. 3).
Defendant was neither surprised nor prejudiced by introduction of a questionably inculpatory statement without the requisite Article 768 notice (defendant's statement "what T-shirt?" when a deputy asked him for his T-shirt, had been introduced at defendant's prior trial). State v. Qualls, 353 So.2d 978 (La.1977). (Assignment of Error No. 4).
The witness Richard Lewis' prior testimony which the trial judge refused to let defendant employ in an effort at impeachment related to irrelevant matters, impermissible for purpose of impeachment. R.S. 15:494 State v. Gibbs, 355 So.2d 1299 (La.1978); State v. Robinson, 342 So.2d 183 (La.1977). (Assignment of Error No. 5).
Defendant's motion for directed verdict at the close of the state's case was properly denied. Louisiana Code of Criminal Procedure article 778 as amended in 1975 bars directed verdicts in jury trials. Even if the motion for directed verdict were available it could not have been properly granted for there indeed was some evidence of defendant's guilt.[1] (Assignment of Error No. 6).
Manslaughter is a responsive verdict to a charge of murder. La.Code Crim.Pro. art. 814. Passion is not an element of manslaughter foreign to first degree murder, ". . . rather, it is a factor which exhibits a degree of culpability less than that present when the homicide is committed without passion caused by provocation." State v. Peterson, supra. Thus the trial court was correct in denying defendant's motion for new trial based on a contrary argument. (Assignment of Error No. 7).
Because a multiple offender proceeding is a status rather than a criminal proceeding, the right to a jury trial does not apply as a matter of Louisiana Constitutional law. State v. Williams, 326 So.2d 815 (La.1976); State v. Maduell, 326 So.2d 820 (La.1976). Nor is the right applicable as a matter of federal constitutional law. Levell v. Simpson, 142 Kan. 892, 52 P.2d 372, appeal dismissed for want of a substantial *1345 federal question, 297 U.S. 695, 56 S.Ct. 503, 80 L.Ed. 986, reh. den. 297 U.S. 728, 56 S.Ct. 592, 80 L.Ed. 1011 (1936). Defendant is not denied the right to confrontation by R.S. 15:529.1 because he is entitled to question the accuracy of any documents and cross examine any witness presented by the state at the proceedings. That right was afforded defendant in this case. Defendant's Assignment of Error No. 8 is thus without merit.
Defendant's argument that R.S. 15:529.1 is unconstitutional for the asserted reasons is also without merit. (Assignment of Error No. 9).

Decree
For the reasons assigned defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The state and the defense stipulated that James Fitzhugh died as a result of massive hemorrhage and trauma caused by multiple gunshot wounds. At trial the state produced various witnesses who testified that David Rachal became quite upset with comments that Fitzhugh made about his wife and that Rachal stated that he wanted to get a gun to shoot Fitzhugh. Defendant shortly afterwards started a fight with another patron in the bar and was asked to leave. Obviously angry he shouted "Come on, let's get the gun and do it" and left with Rachal and several others. They drove around for a while, stopped at defendant's car and went back to the lounge. Rachal then had a gun which according to witnesses looked like the defendant's. When the defendant and Rachal re-entered the lounge, Rachal walked up to Fitzhugh and shot him. This testimony indicated that Rachal was angry and wanted to kill Fitzhugh and that defendant made it possible by getting a gun for Rachal. Evidence was given to establish that someone had been killed and from which intent could be inferred.