377 So.2d 293 (1979)
STATE of Louisiana
v.
Cheryl Booker QUALLS.
No. 64408.
Supreme Court of Louisiana.
November 12, 1979.
Rehearing Denied December 13, 1979.
*295 Paul Henry Kidd, A. Law Corporation, Monroe, Ann Woolhandler, George M. Strickler, Jr., New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Leon H. Whitten, Dist. Atty., for plaintiff-appellee.
SUMMERS, Chief Justice.
The Jackson Parish Grand Jury indicted Cheryl Qualls for the aggravated kidnapping of Willa Cone. La.Rev.Stat. 14:44. As a result of a plea bargain when the case was called for trial, defendant Qualls agreed to plead guilty to attempted aggravated kidnapping, reserving her right to appeal adverse rulings of the trial court. Thereafter she was sentenced to imprisonment for twenty years at hard labor, to run consecutively to any other sentences against defendant in effect at that time.
Although 25 assignments of error were filed, only seven are argued on this appeal. They are considered in this opinion under the numerical designation assigned, and in the order presented, by defendant.
On the pretext of soliciting a donation to help a friend of Willa Cone who was then in the hospital, defendant gained entrance into Mrs. Cone's residence. After a brief conversation, defendant drew a gun and, following a brief but violent struggle, bound and forced the victim into a car. Defendant then drove with Mrs. Cone to her house where the victim was locked up.
Defendant then made several phone calls to the victim's husband, the President of Hodge Bank and Trust Company, demanding $50,000 for the safe return of his wife. Arrangements for the pick up were made. When defendant left to pick up the money, Mrs. Cone, who was then alone, freed herself and ran from the house in which she had been confined. Mrs. Cone was picked up by a police officer, and shortly thereafter defendant was arrested and the money was recovered.
Assignment 2: On June 21, 1978 the trial judge set September 5, 1978 as the trial date, giving the defense until August 15, 1978 to file motions to be heard on September 1, 1978. On August 30, 1978 defendant filed a motion for preliminary examination. On joint motion of defendant and the District Attorney the motion for preliminary examination was fixed for hearing on September 5, 1978. When the hearing was held on that day the motion was denied, and the trial proceeded. During voir dire examination of prospective jurors, defendant pled guilty and was sentenced.
It is the defense contention that the trial judge abused his discretion in denying a preliminary examination. The contention is based upon the argument that Article 292 of the Code of Criminal Procedure denies indicted defendants equal protection of the law under Section 3 of Article I of the Louisiana Constitution.
Article 292 provides:
"The court, on request of the state or the defendant, shall immediately order a preliminary examination in felony cases unless the defendant has been indicted by a grand jury.
"After the defendant has been indicted by a grand jury, the court may rescind its order for a preliminary examination.
"An order for a preliminary examination in felony cases may be granted by the court at any time, either on its own motion or on request of the state or of the defendant before or after the defendant has been indicted by a grand jury."
*296 By the explicit terms of Article 292 the court may deny a preliminary examination once the defendant has been indicted by a grand jury as in this case. This Court has held that the right to a preliminary examination in Louisiana is designed primarily to determine whether probable cause exists to hold an accused party in custody or under bail pending the trial. State v. McCloud, 357 So.2d 1132 (La.1978); State v. Howard, 325 So.2d 812 (La.1976); State v. Hudson, 253 La. 992, 221 So.2d 484 (1969); State v. Singleton, 253 La. 18, 215 So.2d 838 (1968).
"After a grand jury has considered the case and returned an indictment there is no further necessity to determine whether there is `probable cause' to charge the accused with the offense." Bennett, The 1966 Code of Criminal Procedure, 27 La.L.Rev. 175, 186 (1967); see also Comment, The Constitutional Right to a Preliminary Hearing in Louisiana, 35 La.L.Rev. 813 (1975); Official Revision Comment (b) to La.Code Crim.Pro. art. 296.
The indictment of the grand jury, together with the statutory safeguards now provided defendant by Louisiana's Discovery and Inspection statute, La.Code Crim.Pro. arts. 716-723, and other procedural safeguards, coupled with the availability of extraordinary relief in our district courts and the State Supreme Court, are sufficient to protect an accused from discriminatory treatment and unfounded accusations or the denial of equal protection of the laws under this State's Constitution. Seim v. State, 590 P.2d 1152, 1157 (Nev.1979).
An investigating grand jury's indictment is a constitutionally permissible and reasonable alternative to a preliminary hearing. Commonwealth v. Bestwick, 396 A.2d 1311, 1318-1319 (Pa.Super.1978).
Thus, the role of the grand jury in the context of this case was to determine probable cause to hold defendant, a procedure involving twelve citizens chosen from a cross section of the community charged with the responsibility and authority delegated by the law to grand jurors. Such a procedure is well-designed to protect the accused from an overbearing government prosecutor or false accusations. Before an indictment is returned this body must be satisfied that probable cause exists that the accused committed the crime and should be held for trial to defend himself. Therefore, the insistence on a preliminary hearing is ordinarily not justified after indictment, for it can only serve then as a discovery device beyond the permissible limits prescribed by the Discovery and Inspection statute. There is, therefore, no constitutional right to a preliminary hearing where an indictment has been rendered. Harris v. Estelle, 487 F.2d 1293 (5th Cir. 1974); United States v. Anderson, 481 F.2d 685 (4th Cir. 1973); United States v. LePera, 443 F.2d 810 (9th Cir. 1971); United States v. Coley, 441 F.2d 1299 (5th Cir. 1971); United States v. Conway, 415 F.2d 158 (3rd Cir. 1969); State v. Singleton, 253 La. 18, 215 So.2d 838 (1968), and cases cited therein. An exception to this rule exists when, upon proper allegations, the perpetuation of testimony and fixing of bail is involved. La.Code Crim. Pro. art. 296.
This assignment is without merit.
Assignment 19: The trial court erred, the defendant contends, in refusing to quash the indictment against defendant because it is based upon an unconstitutional statute imposing cruel and unusual punishment contrary to the Eighth and Fourteenth Amendments to the United States Constitution and Section 20 of Article I of the Louisiana Constitution.
The statute provides:
"Aggravated kidnapping is the doing of any of the following acts with the intent thereby to force the victim, or some other person, to give up anything of apparent present or prospective value, or to grant any advantage or immunity, in order to secure a release of the person under the offender's actual or apparent control:
"(1) The forcible seizing and carrying of any person from one place to another; or
"(2) The enticing or persuading of any person to go from one place to another; or
*297 "(3) The imprisoning or forcible secreting of any person.
"Whoever commits the crime of aggravated kidnapping shall be punished by death; provided that if the kidnapped person is liberated unharmed before sentence is imposed then the sentence of death shall not be given but the offender shall be sentenced to life imprisonment at hard labor." La.R.S. 14:44
During voir dire examination, defense counsel filed a motion to quash based in part upon the ground that the penal provision of the aggravated kidnapping statute was unconstitutional. The motion was denied. The next day defendant entered her guilty plea to attempted aggravated kidnapping receiving a sentence of twenty years at hard labor.
This Court has upheld a mandatory penalty of life imprisonment for conviction of distribution of heroin. State v. Terrebonne, 364 So.2d 1290 (La.1978); State v. Mallery, 364 So.2d 1283 (La.1978). Therefore, the penalty of twenty years at hard labor actually imposed here presents no extraordinary punishment for a crime at least as heinous as armed robbery where the maximum penalty under an attempt conviction is 49½ years.
Death penalties are no longer mandatory in Louisiana. Following a verdict of guilty in a capital case, a sentence of death may be imposed only after a separate sentencing hearing by the jury, La.Code Crim.Pro. arts. 905-905.9, and after review by this Court under guidelines provided by the Legislature. La.Code Crim.Pro. art. 905.9.1.
These legislative mandates assure the deliberate and careful consideration such a sentence requires. As thus implemented the penal provision of Section 44 of Title 14 of the Revised Statutes is clothed with all those safeguards required to protect the accused against the arbitrary infliction of cruel and unusual punishment.
The aggravated kidnapping statute, in effect, sets out two grades of aggravated kidnapping and prescribes a separate penalty for each. If the victim is harmed during commission of the crime the death penalty is authorized.[1] However, if, as in the instant case, the victim is freed and unharmed before trial, the case is a non-capital felony. And the lesser penalty applies whether the victim is liberated unharmed at the instance of the offender or otherwise. As we held in State v. Sewell, 342 So.2d 156 (La.1977) the lesser penalty is designed to induce the kidnapper not to harm the victim, while the threat of the death penalty serves to promote the same result.
Here the defendant was never threatened with the death penalty because the victim of the kidnapping was released unharmed. Since defendant was never, in this case, exposed to the death penalty she has no standing to challenge the constitutionality of the statute's death penalty provisions. A defendant who is insulated from the death penalty has no basis to contend for its invalidity. We do not, therefore, reach the contention that the death penalty is unconstitutional for aggravated kidnapping. State v. Qualls, 353 So.2d 978 (La. 1977); cf. State v. Williams, 343 So.2d 1026 (La.1977).
This assignment has no merit.
Assignment 1: Defendant contends the trial judge erred when he ruled the defendant had the mental capacity to stand trial and to aid in her defense.
Upon application of the District Attorney the trial judge ordered a sanity commission composed of two medical doctors, neither being psychiatrists. Because no psychiatrists were appointed, defendant contends the finding that she was mentally competent to stand trial was in error.
Article 644 of the Code of Criminal Procedure provides that "The sanity commission shall consist of at least one and not *298 more than three physicians who are licensed to practice medicine in Louisiana, and have been in the actual practice of medicine for not less than three consecutive years."
Each of the appointed physicians met these qualifications. Each examined defendant and found that she was mentally competent to stand trial. One had practiced for 24 years. He knew defendant for several years prior to the offense when she worked as a nurse at the Jackson Parish Hospital. The other doctor's testimony was similar. He also knew defendant as a nurse. Obviously while she served at the hospital the physicians had an opportunity to observe her actions and judge her intelligence and comprehension.
While it may be that psychiatrists are preferable in some cases, it cannot be said that the experience of these physicians and their acquaintance with the defendant was insufficient to qualify them to make the examination and give their opinion as to her mental capacity to stand trial. It should be kept in mind, also, that observation of defendant's demeanor and conduct in court by the trial judge is a factor contributing in some measure to his ruling.
While a thorough mental examination is necessary, the final determination of defendant's competency to stand trial must rest in a judicial authority and is a legal, rather than a medical, issue. The trial judge should not rely so heavily upon the medical testimony that he commits the ultimate decision of competency to the physician. Competency to stand trial should not turn solely upon whether the defendant suffers from a mental disease or defect. The decision must be made with specific reference to the nature of the charge, the complexity of the case and the gravity of the decisions defendant must face at trial. State v. Bennett, 345 So.2d 1129 (La.1977).
Although the Official Revision Comment (a) to Article 644 states, "It is contemplated that Louisiana courts will continue their practice of appointing a psychiatrist or psychiatrists when available ...," this Court has held that Article 644 does not require that physicians appointed to a sanity commission must be psychiatrists. State v. Bennett, supra, State v. Taylor, 347 So.2d 172 (La.1977); State v. Stuart, 344 So.2d 1006 (La.1977).
There is no error in the ruling of the trial judge.
Assignment 25: Eight jurors were challenged peremptorily by the State, six were black. Defendant is black and complains that it was error for the trial judge to permit these peremptory challenges of blacks without showing prejudice to the State "other than that they were black."
There is no showing that they were peremptorily challenged because of their race. No contemporaneous objection on behalf of the defendant was made to these peremptory challenges. La.Code Crim.Pro. art. 841. For the latter reason the complaint is not properly before this Court. Nevertheless, the jurisprudence requires that a defendant show systematic exclusion over a period of time, imposing upon the defendant the burden of establishing a prima facie showing of purposeful discrimination by an historical pattern of exclusion of an identifiable class. And courts will not inquire into the motive of the State's exercise of its peremptory challenges otherwise. Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); State v. Brown, 371 So.2d 751 (La. 1979); State v. Washington, 375 So.2d 1162 (La.1979).
There is no showing of an historical pattern of systematic exclusion of blacks by peremptory challenges by the State. Defendant's assignment is therefore without merit.
Assignments 21 and 22: A judge ad hoc denied a defense motion to recuse the judge who tried this case. Defendant objects to that ruling and also to the refusal of the ad hoc judge to sequester the trial judge during the testimony of other witnesses, since the judge whose recusal was sought was also a witness.
Our review of the record supports the ruling denying the motion to recuse. For an accused to be entitled to the recusation *299 of a trial judge on the ground of bias, prejudice and personal interest, such bias, prejudice and interest must be of a substantial nature and must be based on more than mere conclusory allegations. State v. Maduell, 326 So.2d 820 (La.1976).
As respondent in the motion to recuse, the trial judge was properly excused from the rule of sequestration, just as defense counsel, who testified, was also not sequestered.
Assignment 24: A claim of excessive sentence is urged because, it is alleged, the trial judge sentenced defendant without considering the criteria provided in Article 894.1 of the Code of Criminal Procedure, particularly mitigating circumstances.
Defendant's twenty-year sentence to be served consecutively to a fifteen-year sentence, imposed by the federal courts, is under attack in this assignment. Considering the fact that defendant could have received a maximum sentence of fifty years, her lesser sentence of twenty years was undoubtedly influenced by a number of mitigating factors.
Kidnapping is a violent crime. Defendant's proclivity for violence is amply demonstrated by her confrontation with the victim on the night of this kidnapping. Although she was subdued, the victim was handcuffed and locked in defendant's house.
Although this Court has indicated that the sentencing judge should note any mitigating factors for the record, State v. Watson, 372 So.2d 1205 (La.1979) (No. 63784), the allegation that mitigating circumstances were not adequately considered cannot be asserted for the first time on appeal, as in the case at bar. State v. Cox, 369 So.2d 118 (La.1979).
This assignment is without merit.
For the reasons assigned, the conviction and sentence are affirmed.
DENNIS, J., concurs. I disagree with the statement at footnote one of the opinion that the death penalty was authorized for this cause.
DIXON and CALOGERO, JJ., dissent and assign reasons.
DIXON, Justice (dissenting).
I respectfully dissent.
Once the federal courts have prosecuted, convicted, and sentenced defendant for a crime, Louisiana should not again convict and sentence for the same offense. La. Const., Art. 1, § 15.
CALOGERO, Justice, dissenting.
I dissent, having serious reservations concerning whether a defendant can twice be convicted of the same crime, once in Federal Court and a second time in State Court, without double jeopardy principles being offended. More pointedly however, defendant's sentence to twenty years consecutive to a fifteen year federal sentence, on the heels of a plea bargain approved by the trial court, that no sentence in excess of thirty years would be imposed is under these circumstances excessive, in my view.
NOTES
[1] Since rendition of our opinion in State v. Polk, La., 376 So.2d 151, which became final on October 22, 1979, the death penalty prescribed in Section 44 has been declared unconstitutional. At the time of the trial in the instant case, therefore, the death penalty was apparently authorized. But see Eberheart v. Georgia, 433 U.S. 917, 97 S.Ct. 2994, 53 L.Ed.2d 1104 (1977).