388 So.2d 722 (1980)
STATE of Louisiana
v.
Ralph HOLMES, Jr.
No. 65846.
Supreme Court of Louisiana.
September 3, 1980.
Dissenting Opinion September 24, 1980.
Rehearing Denied October 6, 1980.
*723 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Ralph Roy, Kay Kirkpatrick, Asst. Dist. Attys., for plaintiff-appellee.
Ralph W. Stephenson, Jr., Office of Public Defender, Alton Moran, Baton Rouge, for defendant-appellant.
BLANCHE, Justice.[*]
On January 5, 1979, Ralph Holmes, Jr., Robert Williams and Permella Williams participated in an armed robbery of an A & P Food Store in Baton Rouge, Louisiana. During the robbery, Robert Williams shot the security guard in the face, at close range, with a sawed-off shotgun. He was instantly killed. The assistant manager and a customer were shot in the foot by the same shotgun, and one customer was pistol-whipped. Permella Williams was the driver of the getaway car and, subsequently, turned state's evidence.
*724 Robert Williams was convicted of first degree murder and was sentenced to death.[1] The defendant, Ralph Holmes, was also convicted of first degree murder, but was given life imprisonment without benefit of probation or parole.
Ralph Holmes' participation in the robbery and murder of the security guard is summarized as follows. The car for the robbery was furnished by Ralph Holmes, and it was through him that the trio visited Tyrone Clark's home for the purpose of obtaining the sawed-off shotgun and shells used in the crime. Because of the poor condition of the shotgun, the trio then went to the home of Andrew Robinson, who evidently had some experience in repairing guns. At trial, Robinson claimed that he could not repair the gun but, nevertheless, reassembled it and returned it to them. Thereafter, the trio drove to the A & P Food Store where Permella then entered, purchased some juice and, after paying for the juice, returned to the car. Upon her return, Robert Williams and the defendant, Ralph Holmes, set out for the store with Robert carrying the shotgun under his coat. Upon entering the store, both men slipped ski masks over their heads and approached the second register where the security guard, Willie Kelly, was helping to bag groceries. Defendant Holmes tried to remove Kelly's pistol while Williams positioned himself behind the second register. When Kelly realized what was happening, he reached for his holster in an attempt to either unstrap or pull the pistol from its holster. As soon as the 67-year-old Kelly moved, Williams produced the 12-gauge sawed-off shotgun from beneath his coat and pointed it directly at the guard's face. Williams hollered, "Don't try it", and immediately, shot Kelly in the face killing him instantly.
After Holmes finished unholstering the pistol, he went to the store safe and began removing the money. Williams ordered one of the customers to open a register. When the customer was unable to do so, Holmes stuck the pistol in his back and told him if he didn't comply, he would die. When Holmes became impatient, he pistol-whipped him. Meanwhile, Williams accidentally shot two people in the foot.
Upon completing the robbery, Holmes and Williams ran to a nearby Interstate ramp where Parmella picked them up. The trio then divided the cash, discarded the weapons, and fled to New Orleans, where they were apprehended approximately one week later.

Assignment of Error Number 1
By this assignment, defendant contends that the trial court erred in refusing to grant his motion for a preliminary examination. The defendant filed a motion for a preliminary examination after an indictment was returned charging him with first degree murder. This motion was denied by the trial court without a hearing. Although conceding that the grant of a preliminary exam after grand jury indictment rests within the discretion of the trial court under La. C.Cr.P. art. 292, the defendant maintains that the denial of his motion deprived him of equal protection of the law by failing to provide him with the same procedural provisions afforded those charged via bill of information.
In State v. Qualls, 377 So.2d 293 (La. 1979), this Court rejected a similar argument that C.Cr.P. art. 292 denied indicted defendants equal protection. As noted in Qualls, the primary function of the preliminary exam is to ensure that probable cause exists to hold the accused in custody. Once a valid indictment is returned by a grand jury, the existence of probable cause is conclusively presumed since the grand jury's indictment is constitutionally permissible and a reasonable alternative to a preliminary hearing. Qualls, supra, at 296.
We reiterate our position, as stated in Qualls, that:
"The indictment of the grand jury, together with the statutory safeguards now *725 provided defendant by Louisiana's Discovery and Inspection statute, La. Code Crim.Pro. arts. 716-723, and other procedural safeguards, coupled with the availability of extraordinary relief in our district courts and the State Supreme Court, are sufficient to protect an accused from discriminatory treatment and unfounded accusations or the denial of equal protection of the laws under this State's Constitution." Qualls, supra at 296.
Therefore, this assignment is without merit.

Assignment of Error Number 4
By this assignment of error, the defendant argues that the trial court erred in refusing to give the following instruction on specific intent to the jury:
"In order to convict this defendant of first degree murder, you must find beyond a reasonable doubt that he personally desired the death of Willy Kelly, or that great bodily harm occur to Willy Kelly. If you do not find beyond a reasonable doubt that this defendant had such specific intent you must acquit him of first degree murder, and you may not attribute to him any such specific intent which may have existed on the part of another person."
The court refused to give this charge, but chose to charge the jury as follows:
"The law as to principles reads as follows: All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission or directly or indirectly counsel or procure another to commit the crime are principals. One who aids and abets in the commission of a crime may be charged and convicted with a higher or lower degree of crime depending on the mental element proved at trial. The first degree murder statute, with which this defendant is charged, requires proof of specific intent on the part of this defendant. I have previously read to you the definition of specific criminal intent." (Tr. 342-343).
La.C.Cr.P. art 807 requires that the trial judge give a requested charge which does not require qualification, limitation or explanation and is not included in the general charge or another special charge, if it is correct and pertinent to the case. State v. Badon, 338 So.2d 665 (La.1976); State v. White, 254 La. 389, 223 So.2d 843 (1969).
We note that the requested charge is substantially included in the charge given by the judge. Requested charges which are already substantially given and covered by the general charge are properly refused. State v. Matthews, 380 So.2d 43 (La.1980). For this reason, the requested instruction was properly refused.
This assignment is without merit.

Assignments of Error Numbers 2 and 3
By these assignments, the defendant contends that the trial court erred in permitting the state to present hypothetical situations to prospective jurors and by allowing the prosecution to incorrectly inform the jury on the law of principals.
Our review of the record indicates that the prosecution erroneously felt that all that was necessary to establish the defendant's guilt of first degree murder was proof that the defendant was knowingly involved in the armed robbery which resulted in Willie Kelly's death.[2]
During voir dire examination, the prosecutor attempted to explain Louisiana law of principals, La.R.S. 14:24, by means of hypothetical situations. The basic hypothet concerned three persons who were planning a bank robbery. One of them surveyed the *726 scene at the bank, met with the others, and gave them a sketch of the scene. Later, the other two go to the bank, with one of them driving the car, leaving the first person at his apartment. The passenger-bandit goes into the bank and, at gunpoint, completes the robbery. The prosecution's inquiry continued as follows:
"The fellow who goes into the bank and at gun point gets the money from the teller is of course guilty of what we know as armed robbery. But, according to the law, if the facts are as I have stated them to you, according to the law of this State, the fellow in the car and the one out there in that apartment are equally guilty of armed robbery, you see. Because the law says that when two or more people get together and agree to commit a crime that each one is an agent for the other. That each one is responsible for what the other does, and the other is responsible for what he does. And it is in that way that the man in the car and the one at the apartment are guilty of armed robbery; although, they had no gun and they weren't in the bank at the time of the robbery. Now, that's the law, you see. You can understand that the law says that people can be legally criminally responsible; although, factually they might not be equally involved."
The district attorney then took his hypothet one step further, as follows:
"You can very well, in my hypothet to Mrs. O'Neil, I neglected to say, but you can very well see the problem that you might have with your conscience and with your soul and with yourself if the fellow in the bank had pulled the trigger and killed the teller. And the question would be, well, how about that fellow at his apartment ten miles away and the one sitting in the car. They would be guilty of murder, a homicide."
It is here that the district attorney erred. According to La.R.S. 14:24, principals include:
"All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet its commission, or directly or indirectly counsel or procure another to commit the crime."
However, under R.S. 14:24, not all principals are automatically guilty of the same grade of offense. One who aids and abets in the commission of a crime may be charged and convicted with a higher or lower degree of the crime, depending upon the mental element proved at trial. State v. McAllister, 366 So.2d 1340 (La.1978). Thus, an individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state. In the case of a first degree murder conviction, the requisite mental state is that the defendant had the specific intent to kill. It is not enough to find merely that his coconspirator or accomplice had the necessary mental state, since this intent cannot be inferred to the accused. It must be shown that this accused also had the specific intent to kill.
"Specific criminal intent is defined by Article 10(1) of our Criminal Code (LSA-R.S. 14:10(1)):
"Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. (Italics ours.)
"It is contradistinguished from general criminal intent, which exists `when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act,' Article 10(2), Criminal Code (LSA-R.S. 14:10(2))."
. . . . .
"[5] In short, specific intent is present when from the circumstances the offender must have subjectively desired the prohibited result; whereas general intent exists when from the circumstances the prohibited result may reasonably be expected to follow from the offender's voluntary act, irrespective of any subjective desire to have accomplished such result." *727 State v. Daniels, 109 So.2d 896 (La.1959) at 899.
The assistant district attorney's hypothet was a valid one to explain the law of principals in crimes which require proof of only a general intent, but it did not go far enough. In general intent crimes, criminal intent necessary to sustain a conviction is shown by the very doing of the acts which have been declared criminal. Thus, in the case of armed robbery, when the proof shows that the perpetrator armed with a dangerous weapon causes another to surrender to him whatever was the object of the robbery, the necessary criminal intent has been furnished by the very doing of those criminal acts. If another is killed in the robbery by one of the co-conspirators of a robbery, the other co-conspirator may or may not be guilty of murder, depending upon all of the circumstances surrounding his involvement in the robbery, which finally resulted in the murder of the victim. Proof of one person's intent is not proof of another's intent. Thus, it is necessary as to the co-conspirator who did not pull the trigger that the circumstances indicated that he also actively desired the death of or great bodily harm to the victim.
Contrary to the claims of the district attorney, where specific intent is required, one co-conspirator does not necessarily act as the agent for the other. The state has as to the accused on trial the burden of proving his specific intent beyond a reasonable doubt.
There is no doubt that the prosecutor was laboring under a misconception of the law and that he conveyed this misconception to the jury. However, improper statements of the law during voir dire do not always require a reversal. State v. Burge, 362 So.2d 1371 (La.1978). In Surge, this Court found that the prosecutor's discussions of the defenses of insanity and intoxication were erroneous. But the jury was given the proper explanation during the judge's instructions.
In the instant case, the trial court gave the following correct instruction on the law of principals and the necessity for the proof of specific intent:
"The law as to principals reads as follows: All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission or directly or indirectly counsel or procure another to commit the crime are principals. One who aids and abets in the commission of a crime may be charged and convicted with a higher or lower degree of crime depending on the mental element proved at trial. The first degree murder statute, with which this defendant is charged, requires proof of specific intent on the part of this defendant. I have previously read to you the definition of specific criminal intent." (Tr. 342-343).
This charge is coupled with the admonition that:
"You as jurors are the sole judges of the law and the facts in the case but you must take the law as the court gives it to you."
Thus, we find that although the prosecutor misstated the law, this does not constitute reversible error where the trial court's instruction properly summarized the law.
For these reasons, the assignments are without merit.

Assignments of Error Numbers 5 and 6
By these assignments, the defendant contends that there is total lack of evidence of an essential element of the crime. The defendant maintains that the state failed to introduce evidence of the defendant's specific intent to kill or inflict great bodily harm.
As discussed previously, the defendant is correct that there must be proof of specific intent on the part of Ralph Holmes in order to convict him of first degree murder. Thus, the state must show that the defendant actively desired the prescribed criminal consequences to follow his act or failure to act. R.S. 14:10.
*728 However, specific intent is a state of mind and, as such, it need not be proven as a fact, but may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Williams, 383 So.2d 369 (La.1980); State v. Procell, 365 So.2d 484 (La.1978); State v. Elzie, 343 So.2d 712 (La.1977).
In establishing the rule as to circumstantial evidence, La.R.S. 15:438 provides:
"The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence."
Applying this principle to the facts herein, we find that the state has eliminated every reasonable hypothesis of innocence. Although the defendant could argue that his actions were simply meant to intimidate the victims this is, in light of the evidence adduced at trial, an unlikely possibility. Under R.S. 15:438, the circumstantial evidence need not exclude all possibilities of innocence but only all reasonable hypotheses of innocence. We find that the proof herein does eliminate these hypotheses.
The evidence at trial proved the defendant's considerable involvement in the planning and execution of the robbery. In fact, Ralph Holmes was the one who obtained the shotgun and placed it in the car. In light of this proof, along with his acquiescence in the shooting of Kelly and his own threats to kill, it is reasonable to infer that he intended the use of deadly force, if necessary, to effectuate the robbery.
Traditionally, this Court has sustained a motion for a new trial only when there is a total lack of evidence to prove the crime or an essential element thereof. However, in the instant case, whether the traditional standard of review or the Jackson standard, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is employed, there is sufficient evidence to support the findings of the jury.
For these reasons, the assignment is without merit.
For the reasons assigned, the defendant's conviction and sentence are affirmed.
AFFIRMED.
DIXON, C. J., concurs.
MARCUS, J., concurs and assigns reasons.
DENNIS, J., dissents with reasons.
CALOGERO, J., dissents for reasons assigned by DENNIS, J.
MARCUS, Justice (concurring).
I concur in the affirmance of defendant's conviction and sentence; however, I question the majority's treatment as to what a principal's mental state must be in order to hold him accountable for an offense committed by another, i. e., whether a principal must have the same mental state required by the statute for the perpetration of a crime (Assignments of Error Nos. 2 and 3). In this case, the issue is of no moment since the majority found that defendant as principal had the specific intent to commit the crime. Accordingly, I respectfully concur.
DENNIS, Justice, dissenting.
I respectfully dissent.
The defendant was convicted of first-degree murder due to his status as a principal in the killing of the security guard. In order to justify this conviction, this Court must be convinced, after reviewing the evidence in a light most favorable to the prosecution, that any rational trier of fact could have found each essential element of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). In this case, a first-degree murder prosecution, an essential element of the crime is that the offender must have a specific intent to kill or inflict great bodily harm when the killing is accomplished. La.R.S. 14:30, Acts 1976 No. 657 § 1. In my opinion, the state failed to show that Holmes ever had a specific intent to kill or inflict great bodily harm during the perpetration *729 of the armed robbery in which Robert Williams killed the security guard.
Specific intent "is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La.R.S. 14:10(1). General intent, on the other hand, "is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act." La.R.S. 14:10(2). Because of the difficulties of finding direct evidence of a state of mind, a jury may properly infer intent from circumstantial evidence which excludes every reasonable hypothesis of innocence. La.R.S. 15:445, State v. Elzie, 348 So.2d 712 (La.1977).
This Court held in State v. McAllister, 366 So.2d 1340 (La.1978), that one who aids and abets in the commission of a crime may be charged and convicted with a higher or lower degree of crime depending on the mental element proved at trial. For example, the actual perpetrator of the crime may act in hot blood, in which case he would be guilty of manslaughter, while the instigator may act coolly and thus be guilty of murder. See Wharton's Criminal Law §§ 269, 176 (12th ed. 1932).
Our holding in McAllister accords with the prevailing view in other jurisdictions. See State v. Grebe, 461 S.W.2d 265 (Mo. 1970); Oaks v. Patterson, 278 F.Supp. 703 (D.C.Colo.1968); see also LaFave and Scott, Criminal Law § 64 (1972); Perkins, Criminal Law, pp. 657 et seq. (2d ed. 1979); Wharton, Criminal Law § 274 (12th ed. 1932). LaFave and Scott provide a useful analysis of the issue:
"The notion that the accomplice may be convicted, on an accomplice liability theory, only for those crimes as to which he personally has the requisite mental state, is applicable in a variety of circumstances.... [T]his limitation has proved most significant in the homicide area, where the precise state of mind of the defendant has great significance in determining the degree of the offense .... Thus, because first degree murder requires a deliberate and premeditated killing, an accomplice is not guilty of this degree of murder unless he acted with premeditation and deliberation. And, because a killing in a heat of passion is manslaughter and not murder, an accomplice who aids while in such a state of mind is guilty only of manslaughter even though the killer is himself guilty of murder. LaFave and Scott, Criminal Law § 64 at 507 (1972).
This distinction between persons concerned in the commission of a murder according to their respective states of mind is not only dictated by Louisiana's statutes but also by the constitution as reflected in the death penalty cases.
The legislature has drawn a clear distinction between an offender who participates in a homicide with the specific intent to kill or to inflict great bodily harm and a person who without such specific intent participates in criminal activity resulting in a homicide. At the time of the crime in the present case, first degree murder was defined as a killing of a human being when the offender "has a specific intent to kill or to inflict great bodily harm." La.R.S. 14:30; Acts 1976, No. 657. Second degree murder was defined as the killing of a human being when the offender is engaged in the perpetration or attempted perpetration of certain enumerated felonies, including armed robbery, "even though he has no intent to kill." La.R.S. 14:30.1; Acts 1978, No. 796. Thus, it appears that the lawmakers meant to employ the felony-murder rule in defining second-degree murder, but intended that each defendant exposed to the death penalty for the commission of first-degree murder must have had the specific intent to kill or seriously harm the victim. Indeed, although the Supreme Court has approved the imposition of capital punishment for the crime of murder "when a life has been taken deliberately by the offender," Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), it *730 is highly doubtful that this extreme sanction would be held suitable to unintentional homicides.
Applying these rules to the present case, Holmes' first-degree murder conviction and sentence should be reversed because the evidence in this record does not justify a finding beyond a reasonable doubt that Holmes specifically intended to kill or inflict great bodily harm upon Willie Kelly, the victim. The evidence may support a finding that Holmes intended to participate in armed robbery with Williams, that Holmes intended to use deadly force if necessary to commit the robbery and escape, or that Williams specifically intended to kill Kelly. The evidence clearly does not support, however, a finding that Holmes actively desired or specifically intended Kelly's death or harm.
The evidence of Holmes' involvement in the planning and preparation for the crime does not indicate his active desire that anyone be killed or seriously harmed. The procurement of the shotgun may reflect a willingness to use deadly force to successfully commit the robbery, but it does not eliminate the reasonable hypothesis that Holmes had no active desire for bloodshed. In fact, Holmes' failure to make certain that the unrepaired shotgun would work casts more than a reasonable doubt on the proposition that he specifically intended to kill or inflict great harm.
The commission and aftermath of the crime reveal no evidence from which it can be inferred that Holmes actively desired that the victim, Kelly, should be killed or harmed. At the time Kelly was shot by Williams, Holmes was attempting to unholster the guard's pistol, an act more consistent with sparing his life than taking it. The evidence is clear that Holmes had no opportunity to protest during the split second which elapsed before Williams made good his threat to shoot Kelly. Considering that Holmes was standing beside the victim when Williams blasted the shotgun in their direction, it is highly doubtful that Holmes actively desired that the shotgun should have been fired at that moment. Moreover, Williams had ample opportunity to shoot the guard before Holmes began to unstrap his pistol, and the shotgun was not fired until the guard reached toward his weapon-an even further indication that the guard's death was unexpected and unplanned by Holmes. It is true that Holmes continued to participate in the robbery and escape without expressing remorse over the killing. Nevertheless, none of these acts by Holmes indicates his specific intent that Kelly should have been killed. On the contrary, if killing had been one of Holmes' active desires, he could have shot other persons in the store with the guard's pistol.
The seriousness of Holmes' criminal conduct should not be deprecated. Indeed, at the time of his offense the legislature made a killing in the course of armed robbery, even without specific intent, punishable as second degree murder by imprisonment at hard labor for life without parole, probation, or suspension of sentence for forty years. This sentence is less severe than the one meted out in this case only in allowing the defendant to be considered for parole after forty years. Yet, we must not lose sight of the fact that the defendant in this case was convicted of first-degree murder, potentially a capital offense. When this Court reviews a prosecution in which a defendant's life has been at stake, it should be particularly sensitive to insure that every safeguard has been observed and will be observed in all future first degree murder prosecutions.
Under any standard of review arguably applicable to this case, the evidence is entirely insufficient to support a finding that Holmes specifically intended to kill or to inflict great bodily harm on the victim. The record is completely devoid of any direct evidence that Holmes actively desired the death or harm of the victim; therefore, it cannot be said that there is "some evidence" of Holmes' specific intent. Next, applying our statutory circumstantial evidence rule, it cannot be said that the evidence excludes every reasonable hypothesis of innocence of the charged offense. See La.R.S. 15:438. On the contrary, the evidence *731 pregnantly supports a reasonable hypothesis that Holmes had no active desire to kill or harm Kelly.
Finally, viewing the evidence in a light most favorable to the prosecution, no rational trier of fact could have found beyond a reasonable doubt that Holmes actively desired Kelly's harm or death. See Jackson v. Virginia, supra.

ON APPLICATION FOR REHEARING
DENNIS, Justice, dissenting to denial of rehearing.
I respectfully dissent to the denial of the application for rehearing for the reasons I assigned originally, and additionally, for the Court's refusal to request supplemental briefs to allow more extensive consideration of serious legal questions which the indigent defendant did not address in his application.
NOTES
[*] Honorable Edward A. de la Houssaye, III participated in this decision as Associate Justice pro tempore.
[1] On appeal, Williams' conviction and sentence were affirmed, 383 So.2d 369 (La. 1980), and his application for rehearing was denied May 19, 1980.
[2] This misconception is apparent in the state's objection to the following defense inquiry:

"Q. Now, on the question of specific intent, the Court is going to instruct you, if you are selected, on what is required to prove first degree murder. One of the things that the Court will tell you is that it must be found, all of these things happened, and in addition, this accused person, not someone else, had the specific intent to kill or inflict
MR. ROY: Judge, I would like to take strenuous objection to that statement as being an incorrect statement of the law."