484 So.2d 889 (1986)
STATE of Louisiana
v.
Raymond D. McCUE and Kenneth James Gossage.
No. 85 KA 0836.
Court of Appeal of Louisiana, First Circuit.
February 25, 1986.
*890 Abbott Reeves, Asst. Dist. Atty., Gretna, for State.
John R. Simmons, Indigent Defender's Office, Covington, for defendants.
Before GROVER L. COVINGTON, C.J., and WATKINS and SHORTESS, JJ.
WATKINS, Judge.
Defendants, Raymond D. McCue and Kenneth James Gossage, were charged by bill of information with the attempted second degree murder of Ronald Wayne Wiggins in violation of LSA-R.S. 14:27 and 14:30.1.[1] Defendants pled not guilty, were tried by jury, and found guilty as charged. The trial court sentenced each defendant to serve twelve years imprisonment at hard labor without benefit of probation, parole or suspension of sentence. Defendants bring this appeal, both alleging four assignments of error.[2] However, Gossage, in *891 his original and supplemental briefs, addressed only two of the assignments, namely assignments numbers 1 and 4, and McCue only one, assignment number 4. Accordingly, those assignments of error not briefed are considered abandoned. Uniform RulesCourts of Appeal, Rule 2-12.4.
This offense occurred on November 23, 1983. On that date, Wiggins testified that he returned home early from work around 3:30 p.m. Because his automobile was not working, he had decided to obtain the services of Gossage to make the necessary repairs. Wiggins and his girlfriend, Pamela Bateman, were driven to the home of Gossage's mother-in-law where they located him. Gossage, accompanied by his wife, Glenda, drove Wiggins and Bateman in his truck back to Wiggins' trailer. Soon after their arrival, Wiggins departed with his boss and a co-worker, saying he would return shortly, leaving Gossage to make the repairs. After waiting approximately thirty to forty-five minutes for Wiggins to return, the three decided to leave in search of him.
Unsuccessful in their attempts to locate Wiggins, they went back to the trailer only to find that he had returned in the meantime. Although the testimony is in dispute as to who started the altercation, it was apparently around this time that a fight broke out between Gossage and Wiggins after a brief argument over payment for the car repairs performed by Gossage.
Both Wiggins and Bateman testified that Glenda participated in the fight by striking Wiggins with a pair of posthole diggers. It was with this same device that Gossage began to break the windows of Wiggins' car. In an effort to stop Gossage, Wiggins threw a tricycle at him but struck his wife. The fight concluded and the Gossages left in their truck.
Wiggins then told Bateman to leave his trailer since she had failed to assist in the fight. He testified that approximately sixty to ninety minutes later, Gossage returned to Wiggins' trailer in his truck accompanied by defendant, Raymond McCue, Glenda's brother. Wiggins testified that McCue got out of the truck and shouted, "I'm going to kill you, you MF, for messing up my sister," and then started shooting, initially striking Wiggins in the stomach. Several other shots struck Wiggins as he was being chased by McCue who was still firing. Wiggins found refuge in a neighbor's yard and McCue halted his pursuit. He surmised that the pair then drove away. Wiggins testified that Gossage remained in the truck throughout this ordeal.
Medical records introduced into evidence show that Wiggins was treated that same evening at St. Tammany Parish Hospital for multiple gunshot wounds. Wiggins testified that the weapon used was a sixteen-shot.22 caliber rifle which McCue fired "quite a few times".
Dale Luke, a neighbor of Wiggins, testified that he took Wiggins to the hospital and his wife called the police. He further testified that about ten minutes earlier, Wiggins had been at his house inquiring as to the whereabouts of Pamela Bateman. Additionally, Luke testified that he saw a vehicle pass his home just before Wiggins' second visit but heard no gunshots.
The Gossages testified that after the fight they returned to her mother's house; upon their arrival, Karen McCue, Raymond McCue's wife, took Glenda to the Bogalusa hospital.
Kenneth Gossage testified that he remained at his mother-in-law's home until 9:30 p.m. and that Raymond McCue remained there until 9:00 p.m. when he left with Lancey Davis to use Davis' telephone to obtain information about Glenda. He denied having driven back either alone or with McCue to Wiggins' trailer after the fight. He also denied seeing McCue with a gun that evening.
*892 Raymond McCue testified he saw Wiggins on the day of the incident when he left with Gossage to repair his car and that he did not see him again that day, specifically denying going to Wiggins' trailer.
The defendants presented the testimony of alibi witnesses Lancey Davis, John Pennington, and Benjamin Thomas Dorsey, all of whom claimed to have attended a barbeque at McCue's home at about 8:00 p.m. on the evening of the incident. Essentially, all testified that when they arrived at McCue's home that evening, McCue was present but Gossage was not until about 8:00 p.m. They further testified that both defendants remained there until 9:00 p.m. when McCue left to use the telephone at Lancey Davis' home.

INSUFFICIENCY OF THE EVIDENCE
By means of this assignment, defendant Gossage asserts that the evidence was insufficient to convict him of the instant offense. He argues that attempted second degree murder requires a specific intent to kill, and there was no evidence or testimony that he specifically intended the death of Wiggins.
The proper method to raise the issue of insufficient evidence is by motion for post verdict judgment of acquittal pursuant to LSA C.Cr.P. art. 821. State v. Korman, 439 So.2d 1099 (La.App. 1st Cir. 1983). The record does not indicate defendant made such a motion. A reviewing court, in spite of defendant's failure to proceed properly, must consider the evidence to determine whether or not it meets the constitutional standards of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), now codified in article 821. State v. Washington, 421 So.2d 887 (La.1982), State v. Bell, 442 So.2d 715 (La. App. 1st Cir.1983), writ denied, 444 So.2d 1244 (La.1984). The standard set forth in article 821 is whether or not, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Walker, 447 So.2d 54 (La.App. 1st Cir.1984).
LSA-R.S. 14:24 provides:
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
In State v. Holmes, 388 So.2d 722, 726 (La.1980), the Supreme Court stated:
However, under R.S. 14:24, not all principals are automatically guilty of the same grade of offense. One who aids and abets in the commission of a crime may be charged and convicted with a higher or lower degree of the crime, depending upon the mental element proved at trial. State v. McAllister, 366 So.2d 1340 (La. 1978). Thus, an individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state.
The gravamen of the crime of attempted murder, whether first or second degree, is the specific intent to kill and the commission of an overt act tending toward the accomplishment of that goal. LSA-R.S. 14:27; LSA-R.S. 14:30.1; State v. Jarman, 445 So.2d 1184 (La.1984).
Due to the difficulty of presenting direct evidence as to a defendant's state of mind, the trier of fact may infer intent from the facts and circumstances of a transaction and the defendant's actions. LSA-R.S. 15:445. To possess specific intent an offender must actively desire the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10(1). The existence of specific intent is an ultimate legal conclusion to be resolved by the trier of fact. State v. Sterling, 462 So.2d 290 (La.App. 1st Cir.1984), writ denied, 466 So.2d 466 (La.1985).
The jury's verdict indicates that, after considering the credibility of the witnesses and weighing the evidence, it accepted the testimony of Wiggins, the victim, and rejected defendants' testimony *893 and the alibi testimony presented on defendants' behalf. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. Such determination is a question of fact, which the appellate court does not have jurisdiction to review. State v. Kirkley, 470 So.2d 1001 (La.App. 1st Cir.1985), writ denied, 475 So.2d 1105 (La.1985); State v. Norman, 448 So.2d 246 (La.App. 1st Cir.1984), reversed in part on other grounds, 452 So.2d 1178 (La.1984).
Gossage drove the vehicle in which he and McCue were riding and brought it to a stop in front of Wiggins' trailer and remained inside. McCue stepped outside the vehicle and called to Wiggins and then commenced shooting. Gossage's participation clearly makes him a principal to the shooting as defined by LSA-R.S. 14:24. However, in our review of the record we are unable to discover any evidence from which a trier of fact reasonably could find that Gossage specifically intended to kill Wiggins. Wiggins' testimony indicates that Gossage made no verbal expression nor did he give any indication of an intent to kill Wiggins. Instead, he remained inside his vehicle while his co-defendant repeatedly fired a rifle at Wiggins. These facts and circumstances do not support any inference as to the presence of the specific intent to kill needed to support Gossage's conviction of attempted second degree murder. While it is possible that defendants planned to kill Wiggins which would have supplied the required specific intent, the evidence, when viewed in the light most favorable to the prosecution, does not support such a finding. See, State v. Tobias, 452 So.2d 157 (La.1984).
However, when the evidence supports a conviction for a lesser and included offense which is a legislatively authorized responsive verdict, ordering entry of a judgment of guilty of the lesser and included offense is appropriate. LSA C.Cr.P. art. 821 E; see, State v. Byrd, 385 So.2d 248 (La.1980). Guilty of aggravated battery is a responsive verdict to attempted second degree murder. LSA C.Cr.P. art. 814 A(4). Aggravated battery was necessarily found by the jury in the instant case, and there is sufficient evidence in the record to support such a finding beyond a reasonable doubt. Accordingly, defendant Gossage's conviction of attempted second degree murder is set aside, and the case is remanded to the trial court to enter a judgment of conviction of aggravated battery, LSA-R.S. 14:34, and to impose a sentence for that crime.

PATENT SENTENCING ERRORS
We agree with defendants' contention that the imposed sentences of twelve years at hard labor without benefit of probation, parole or suspension, constitute patent errors requiring that they be vacated.
Second degree murder is punishable by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. LSA-R.S. 14:30.1. Attempted second degree murder is punishable by imprisonment at hard labor for not more than fifty years but with the possibility of parole, probation or suspension of sentence. LSA-R.S. 14:27 D(1). Thus, except in those cases where an enhanced penalty is properly imposed under either or both of the firearm enhancement statutes, LSA-R.S. 14:95.2 and/or LSA C.Cr.P. art. 893.1, the penalty for attempted second degree murder may not be imposed without the benefit of parole, probation or suspension of sentence. Cf. State v. Green, 391 So.2d 833 (La.1980).
Additionally, we note that the sentencing transcript discloses that the trial court stated that neither defendant was "eligible for probation as a result of using a weapon, a gun in this shooting" and also because defendants were second felony offenders. The trial court further stated:
The Code of Criminal Procedure, Article 893.1 and Louisiana Revised Statute 14:95.2 plays (sic) a part in this Court's sentencing. Code of Criminal Procedure, Article 893.1 provides a five year minimum sentence when a felony is committed with a gun and that is without benefit *894 of probation or parole or suspension of sentence. Under Louisiana Revised Statute 14:95.2 an additional two years without benefits must be applied.
As to LSA-C.Cr.P. art. 893.1, defendants argue that it is inapplicable due to their prior felony convictions. If the trial court determines that either defendant has a prior felony conviction, then it is prohibited by LSA C.Cr.P. art. 893, as interpreted in State v. Wimberly, 414 So.2d 666 (La.1982), from suspending the sentence given. By its own terms, LSA C.Cr.P. art. 893.1(2), which would allow an additional five years to be added, is inapplicable since it can be imposed only when suspension of sentence is not otherwise prohibited which in this case it is due to prior felony convictions. Thus, on remand, the trial court will be precluded from applying the provisions of this enhancement article where either defendant is shown to have a prior felony conviction. See, State v. Williams, 475 So.2d 392 (La.App. 1st Cir.1985).
Apparently, the trial court, based on the above quoted statements, also meant to apply the provisions of LSA-R.S. 14:95.2 to both defendants due to the use of a firearm in commission of the attempted second degree murder. However, because the bill of information did not charge defendants specifically with that statute, it may not be applied in their sentencing. See, State v. Jackson, 480 So.2d 263 (1985, La.Sup.Ct.).

CONCLUSION
For the above reasons, the conviction on the charge of second degree murder as to defendant Kenneth Gossage is set aside and the case is remanded to the trial court to enter a judgment of conviction of aggravated battery, in violation of LSA-R.S. 14:34 and to sentence him accordingly. As to defendant Raymond McCue, we vacate the sentence given and remand for resentencing. Both the sentencing and resentencing are to be done in accordance with our views regarding the application of the provisions of LSA-R.S. 14:95.2 and LSA-C. Cr.P. art. 893.1.
KENNETH JAMES GOSSAGE: CONVICTION AND SENTENCE REVERSED, REMANDED FOR ENTRY OF JUDGMENT OF CONVICTION FOR AGGRAVATED BATTERY AND SENTENCE THEREON.
RAYMOND D. McCUE: CONVICTION AFFIRMED, SENTENCE VACATED, REMANDED FOR RESENTENCING THEREON.
NOTES
[1] We note as error patent that the bill of information contains an erroneous citation in regard to the statute alleged to have been violated viz. reference is made to "R.S. 14:27:30.1", which should have instead been to LSA-R.S. 14:27 and 14:30.1.

LSA C.Cr.P. art. 464 requires the inclusion in an indictment of the official citation of the statute a defendant is alleged to have violated. However, the article further provides that "(e)rror in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice." Neither defendant made any showing of having been misled to his prejudice, nor does the record indicate that either was prejudiced thereby. State v. Tasker, 448 So.2d 1311 (La.App. 1st Cir.1984), writ denied, 450 So.2d 644 (La.1984).
[2] Four alleged assignments of error are:

1. There is an insufficient factual basis upon which a rational trier of fact could find defendants guilty beyond a reasonable doubt.
2. Their sentences are excessive.
3. Defendants were denied their constitutional right to counsel because of the incompetence of their trial counsel.
4. Because of error patent on the face of the record, their convictions must be reversed.