464 So.2d 1091 (1985)
STATE of Louisiana
v.
Raymond VALENTINE.
No. 84-KA-0690.
Court of Appeal of Louisiana, First Circuit.
February 28, 1985.
Writ Denied May 13, 1985.
*1093 Ossie Brown, Dist. Atty. by Jesse Bankston, Baton Rouge, for plaintiff-appellee.
David Price, Asst. Public Defender, Baton Rouge, for defendant-appellant.
Before EDWARDS, SHORTESS and SAVOIE, JJ.
EDWARDS, Judge.
Raymond Valentine, convicted of possession of pentazocine under LSA-R.S. 40:967C and sentenced to three years imprisonment without hard labor, appeals his conviction and sentence, alleging six assignments of error.
We affirm.
Officers David Whatley and Stanley Bihm of the Baton Rouge Police Department were patrolling the area around 38th Street and Cain, an area notorious for drug related crimes, on the night of October 6, 1983. They were in an unmarked police car, cruising between 5 and 10 mph. At about 9:30 p.m., while northbound on 36th Street, they noticed Valentine walking in the same direction. They followed him down the street and around the corner when he turned right at Cain. Officer Whatley noticed a small "shining object" in Valentine's hand. As they passed him, Valentine, who according to Whatley had by then become aware of their presence and knew that they were police officers, tried to shield the object from view. After they had pulled ahead of him, he dropped it on the ground. The officers stopped the car; Bihm detained Valentine while Whatley retrieved the object, a packet of tin foil which contained two tablets, one of which was later determined to be pentazocine, also known as talwin, a Schedule II controlled dangerous substance under LSA-R.S. 40:964.
Before trial, defendant filed a motion to suppress the seized pentazocine and a motion to suppress certain inculpatory statements which he contends were made as a result of threats by Officer Bihm. Both motions were denied.
In his first assignment of error, the defendant contends that the trial judge erred in overruling his objection to hearsay testimony at the suppression hearing.
The defendant testified that while on the way downtown for booking, Officer Bihm coerced certain inculpatory statements from him by telling him that he would have "to sing" or "go back to the penitentiary." Officer Bihm was unavailable for testimony at the suppression hearing, but Officer Whatley did testify on behalf of the State. When he was asked whether Officer Bihm made the alleged threat, defendant objected to his testimony on the grounds of hearsay. The trial judge overruled the objection, and Whatley answered that Bihm made no such threat. Defendant contends that Officer Whatley's denial was inadmissible hearsay.
Hearsay evidence is evidence of an unsworn, out-of-court statement made by a person other than a testifying witness and offered as proof of the truth of the statement's content. If such a statement is offered for any other purpose, such as proof only that the statement was made, then the evidence is not hearsay. State v. Sheppard, 350 So.2d 615, 643 (La.1977); State v. Monk, 315 So.2d 727, 740 (La. 1975).
Whatley's testimony does not contain hearsay evidence for two reasons. First, since he denied that any statement was in fact made, his testimony was not offered as proof of any statement. Second, *1094 his testimony was not offered to prove the truth of any statement. Unless testimony is offered to prove the truth of an out-of-court statement, there is no basis for a hearsay objection. Accordingly, the trial court properly overruled defendant's objection. This assignment of error is without merit.
In his second assignment of error, defendant contends first that the State failed to prove beyond a reasonable doubt that his inculpatory statements were "free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises," as required by LSA-R.S. 15:451.
Under article 451, the State must specifically rebut defendant's allegations and may not rely upon a general disclaimer that no undue influence was asserted on the defendant. State v. Dison, 396 So.2d 1254, 1257 (La.1981). However, in determining whether the ruling on defendant's motion to suppress was correct, we may consider not only the evidence introduced at the hearing but also all pertinent evidence given at the trial of the case. State v. Beals, 410 So.2d 745 (La.1982).
We find that the allegations that Officer Bihm told the defendant to "sing" or he would go back to the penitentiary were specifically rebutted. Officer Whatley, who was present in the automobile when the threats were alleged to have been made, specifically denied that Officer Bihm made such threats. Moreover, Officer Bihm testified at trial that he made no offers of inducement or leniency to the defendant or threatened or physically abused him.
When the admissibility of a confession or inculpatory statement turns on credibility evaluations of a witness, the trial judge's determination will not be overturned on appeal unless his evaluations are not supported by the evidence. State v. Jackson, 414 So.2d 310, 312 (La.1982). We find there is evidence to support the trial court's ruling. Therefore, the inculpatory statement was properly admitted into evidence at trial.
Second, defendant claims that the pentazocine should have been suppressed as the fruit of an unlawful detention. The state argues that Officer Whatley recovered the evidence after it had been lawfully abandoned.
If, prior to the abandonment of the evidence, there is an unlawful intrusion into the defendant's constitutional right to be left alone, then the evidence is unlawfully seized. An unlawful intrusion occurs when there is an actual stop without reasonable cause or when a stop without reasonable cause is imminent. State v. Belton, 441 So.2d 1195, 1199 (La.1983). The legality of a stop which occurs after an abandonment is irrelevant in determining whether the evidence must be suppressed. See State v. Fleming, 457 So.2d 1232, 1235 (La. 1st Cir.1984) (Edwards, J., concurring).
Defendant argues that an unreasonable stop was imminent before he abandoned the foil packet because the officers, who knew the defendant was aware of their presence, followed him around the corner on to Cain Street. This situation does not approach those in which courts have found that a stop was imminent.
For example, in State v. Chopin, 372 So.2d 1222 (La.1979), the police drove past defendant, turned around and came back toward him, turned on the bright lights, and stopped three to four feet in front of him. Defendant then ran and dropped a bag containing drugs. Although defendant was not actually stopped when he dropped the bags (because he was running from the officers), a stop was imminent. In State v. Saia, 302 So.2d 869 (La.1974), the police pulled their car up beside defendant who had just left a house known to be a drug outlet. She turned around and headed back for the house. The police got out of their car and followed her back to the front door where they overtook her. She reached into her waistband and pulled out two glassine envelopes which contained heroin, but before she could put the envelopes in her mouth the police snatched *1095 them out of her hand. In both cases, the court found that a stop was imminent because the police had forced the confrontation and caused the defendant to abandon or at least attempt to abandon the evidence.
In the instant case, the police did not force a confrontation with the defendant nor give any indication that a stop was imminent before he had abandoned the evidence. They had passed him on the street, and did not stop the car, get out and approach the defendant until after he had thrown the foil packets on the ground. Indeed, these facts are remarkably similar to those in State v. Ryan, 358 So.2d 1274 (La.1978).
In that case, the police officers noticed the defendant shielding an object from sight as they passed him in an unmarked police car. They circled back and stopped the car near the accused. One of the officers testified that the accused dropped the object after the officer had gotten out of the car and started towards him; the other officer testified that the defendant dropped the object before anyone got out of the car. Both agreed that one of them detained the defendant while the other recovered the abandoned object. The Louisiana Supreme Court held that the property had been abandoned prior to any detention or imminent detention, and that the accused could not be expected to carry contraband and drop it with impunity simply because he sees approaching police officers.
Because the evidence was abandoned prior to any detention, the trial judge correctly denied defendant's motion to suppress. This assignment of error is without merit.
In assignments of error numbers 3 and 4, defendant contends that the trial court erroneously denied his challenge for cause of two prospective jurors.
The defendant contends that juror Shirley Smith was not impartial under LSA-C. Cr.P. art. 797(2), because the prosecuting attorney in this case had previously prosecuted a man found guilty of murdering Ms. Smith's sister. He further contends that juror Earl Lorraine Gibson should have been excluded because her relationship with law enforcement agencies indicated a likelihood of influencing her verdict in the State's favor. LSA-C.Cr.P. art. 797(3). Miss Gibson works as a correctional officer for the Department of Corrections in St. Gabriel Prison for Women, and four of her first cousins work for the Sheriff's Department of East Baton Rouge Parish.
The trial judge is vested with broad discretion in ruling on a challenge for cause and his ruling will not be disturbed on appeal without a showing of abuse of discretion. State v. Glaze, 439 So.2d 605, 606-607 (La.App. 1st Cir.1983).
Despite the murder of her sister, Shirley Smith unhesitatingly said that she could and would be fair and impartial toward the defendant. The trial judge, in denying defendant's challenge for cause, noted that defendant was not on trial for a crime of violence and that he was satisfied Ms. Smith would be an impartial juror. We see no abuse of discretion in his ruling.
As for Miss Gibson, a criminal juror's association with law enforcement duties must be closely scrutinized by the trial court. State v. Chapman, 410 So.2d 689, 696 (La.1981). Miss Gibson answered that she would have no trouble being objective in determining guilt or innocence, and that she would not be biased in weighing the credibility of police officers who would testify. None of her relatives were involved with defendant's case. In light of these considerations, we find no abuse of discretion in accepting Miss Gibson as a fair and impartial juror. These assignments of error are without merit.
In assignments of error numbers 5 and 6, defendant contends that the trial judge imposed an excessive sentence and failed to comply with the sentencing guidelines in LSA-C.Cr.P. art. 894.1.
The trial judge has wide discretion in imposing a sentence within the statutory limits. Given compliance with the sentencing criteria of LSA-C.Cr.P. art. *1096 894.1, a sentence will not be set aside as excessive unless it is so disproportionate to the crime that it shocks our sense of justice or is nothing more than the needless imposition of pain and suffering. See State v. Wardlow, 448 So.2d 257, 259 (La.App. 1st Cir.1984), and the cases cited therein.
The record indicates that the trial judge thoroughly examined both mitigating and aggravating circumstances peculiar to the defendant. He noted that the defendant had no juvenile record, that he attended college for a year and then enlisted into the Navy. Following an honorable discharge from the Navy, defendant worked as an auto mechanic and was thought of as a good worker. He began attending Southern University, but because of a drug addiction, he dropped out of school and turned to crime to support his habit.
The trial judge also noted that defendant was a second felony offender and eligible for supervised probation only under LSA-C.Cr.P. art. 893, which he stated he would not apply in this particular case. He felt there was an undue risk that defendant would commit another crime during any period of a suspended sentence with unsupervised probation, and that any lesser sentence would deprecate the seriousness of the crime. In light of these factors, we find adequate compliance with article 894.1.
Any person convicted of possession of pentazocine shall be imprisoned with or without hard labor for at least two but not more than five years. He may also be fined up to $5,000. LSA-R.S. 40:967C(1). Defendant was sentenced to serve three years in prison without hard labor. We do not feel this is an excessive sentence. These assignments of error are without merit.
For the foregoing reasons, we affirm the trial court's denial of the defendant's motion to suppress and affirm the defendant's conviction and sentence.
AFFIRMED.