BOWES, Judge.
Appellant, George Schaffer, was charged by a bill of information with possession with intent to distribute lysergic acid diethylamide (L.S.D.), a violation of LSA-R.S. 40:966.
Pre-trial motions to suppress evidence and to compel the disclosure of information relating to the identity of a confidential informer were denied. After an unsuccessful application to this court for supervisory writs, appellant entered a plea of guilty, reserving his right to appeal the issue of the denial of the motion to suppress evidence pursuant to the provisions of State v. Crosby, 338 So.2d 584 (La.1976). A presen-tence investigation report was ordered and, on April 23, 1984, Schaffer was sentenced to three years at hard labor. He now appeals, arguing a single assignment of error: “The trial court committed reversible error in denying the Motion to Suppress.”
On October 20, 1983, Jefferson Parish narcotics agents had obtained an apparently valid search warrant to search for narcotics at 6525 Park Manor Avenue, Apt. B, which was indisputably the residence occupied by defendant on that date. They were using a Time Saver parking lot as a staging area, preparatory to executing the warrant at the above address, when a car bearing the defendant happened to pull into the parking lot and stop.
The following factional narration is excerpted from the testimony of Agent Farrell Whitehead of the Jefferson Parish Sheriffs office, Narcotics Division:
Yes, Sir, myself and some other Agents were at the Time Saver parking lot, preparing to put on our raid equipment, which consists of our raid jackets and a vest. At this time, we were contacted over the radio frequency by Agent Grieff, and was advised that he observed a vehicle which was commonly used by Thomas Wood and George Schaffer pulling into the parking lot of the Time Saver. At this time, I observed a white male subject, who was later learned to be Thomas Wood, exit his vehicle and enter the Time Saver. When I observed Mr. Wood exit the Time Saver and enter into his vehicle; upon doing so, Agent Soto yelled out, Hey, George. At this time, Mr. Wood replied, I am not George, George is in the vehicle. We approached the vehicle and identified ourselves as Police Officers, and asked the subject, who was sitting in the passenger side of the vehicle, if his name was George Schaffer, which he replied that he was. At this time we asked him to step out of the vehicle and produce some identification. Shortly after this, he removed from his wallet a Louisiana Driver’s License in the name of George Schaffer. I asked him if he resided at 6525 Park Manor Avenue, Apt. B, at which he replied, he did. At this time, we advised that we did have a search warrant for his residence and, I believe, one of the Agents showed Mr. Schaffer a copy of the search warrant. At this time, I observed Mr. Schaffer was attempting to put his wallet in his back pocket. I observed the wallet hit the ground and his foot hit the wallet. It appearing to me he was trying to shove it under the car. At that time, I retrieved the wallet, opened the wallet, and observed a couple of denominations of U.S. currency and *1351 also observed an aluminum foil wrapper, which I opened up and it contained 23 dosage units of LSD, which I turned over to Agent Grieff.
Appellant does not contend that police officers have no authority to seize and search property abandoned by its owner in anticipation of or during a lawful detention. Rather, the defense argues that the officers in the present case precipitated the abandonment by forcing a confrontation between Schaffer and the officers without reasonable cause to detain him. The narrow questions presented for review, then, are, first, whether Agent Whitehead was in possession of sufficient articulable facts to justify the detention of the defendant and, second, was the property abandoned and thus lawfully seized and searched.
We find the U.S. Supreme Court case of Michigan v. Summers, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), disposi-tive of the first issue before us.
In Summers, supra, police officers, about to execute a search warrant to search a house for narcotics, chanced upon the defendant, Summers, descending the front steps. The officers asked for his help in entering the house and detained him while they searched the premises. Discovering narcotics, the police then ascertained that Summers owned the house, arrested him, searched him, and found heroin in his coat pocket. The defendant moved to suppress the heroin as the product of an illegal search, not based on probable cause.
In holding that the defendant was lawfully detained, the court observed:
In assessing the justification for the detention of an occupant of premises being searched for contraband pursuant to a valid warrant, both the law enforcement interest and the nature of the “ar-ticulable facts” supporting the detention are relevant. Most obvious is the legitimate law enforcement interest in preventing flight in the event that incriminating evidence is found. Less obvious, but sometimes of greater importance, is the interest in minimizing the risk of harm to the officers. Although no special danger to the police is suggested by the evidence in this record, the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence, [footnote omitted] The risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation. Cf. 2. W. LaFave, Search and Seizure Section 4.9, p.p. 150-151 (1978). Finally, the orderly completion of the search may be facilitated if the occupants of the premises are present. Their self-interest may induce them to open locked doors or locked containers to avoid the use of force that is not only damaging to property but may also delay the completion of the task at hand.
It is also appropriate to consider the nature of the articulable and individualized suspicion on which the police base the detention of the occupant of a home subject to a search warrant. We have already noted that the detention represents only an incremental intrusion on personal liberty when the search of a home has been authorized by a valid warrant. The existence of a search warrant, however, also provides an objective justification for the detention. A judicial officer has determined that police have probable cause to believe that someone in the home is committing a crime. Thus a neutral magistrate rather than an officer in the field has made the critical determination that the police should be given a special authorization to thrust themselves into the privacy of a home, [footnote omitted] The connection of an occupant to that home gives the police officer an easily identifiable and certain basis for determining that suspicion of criminal activity justifies a detention of that occupant.
[The Supreme Court concluded that] If the evidence that a citizen’s residence is harboring contraband is sufficient to persuade a judicial officer that an invasion of the citizen’s privacy is justified, it is *1352 constitutionally reasonable to require that citizen to remain while officers of the law execute a valid warrant to search his home, [footnote] Thus, for Fourth Amendment purposes, we hold that a warrant to search for contraband [footnote omitted] founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted. [footnote omitted]
Michigan v. Summers, supra, 101 S.Ct. at 2594-2595.
In the present case, while the officers detained the defendant a distance from his residence, the principles enunciated in Summers are equally applicable for the following reasons.
Agent Whitehead was in possession of sufficient information at the time of the defendant’s detention to know that George Schaffer was in the vehicle that the agents were approaching and that it was his residence the agents were about to search, consequently he had the right to make an investigatory stop. As the warrant had established to a neutral magistrate that there was probable cause to believe the occupants of the residence were engaged in criminal activity, we find there was objective justification for the detention of Schaf-fer to inform him of the warrant’s existence, to secure his presence for its execution, and to prevent his escape.
The final question before us is whether or not the defendant’s wallet was abandoned and thus legally seized and searched. The Louisiana Supreme Court in State v. Belton, 441 So.2d 1195 (La.1988), held:
When police officers make an investigatory stop without the legal right to do so, property abandoned or otherwise disposed of as a result thereof cannot be legally seized. If, however, property is abandoned without any prior unlawful intrusion into a citizen’s right to be free from government interference, then such property may be lawfully seized. In such cases, there is no expectation of privacy and thus no violation of a person’s custodial rights. It is only when the citizen is actually stopped without reasonable cause or when a stop without reasonable cause is imminent that the “right to be left alone” is violated, thereby rendering unlawful any resultant seizure of abandoned property. State v. Andrishok, supra [484 So.2d 389 (La.1983)]; State v. Chopin, supra [372 So.2d 1222 (La.1979)]; State v. Ryan, 358 So.2d 1274 (La.1978).
In the case before us, Agent Whitehead testified that defendant Schaffer, after voluntarily removing his wallet from his own pocket to identify himself, dropped the wallet and, using his foot, “was trying to shove it under the car.” Under those circumstances, we find that appellant’s wallet was “abandoned or otherwise disposed of....”
As the detention of Schaffer by Officer Whitehead was valid for the reasons stated above, the property abandoned was properly and validly seized and examined.
Appellant filed a second assignment of error with the trial court; however, since this assignment was not briefed, we deem it abandoned. See Uniform Rules—Courts of Appeal, Rule 2-12.4; State v. Smith, 452 So.2d 251 (La.App. 5th Cir.1984) and State v. Becnel, 441 So.2d 339 (La.App. 5th Cir.1983).
Accordingly, for the reasons stated above, the trial judge’s ruling on the motion to suppress was correct and the defendant’s conviction and sentence are affirmed.
AFFIRMED.