FRED W. JONES, Jr., Judge.
Defendant Littleberry was originally charged by bill of information with possession of marijuana with intent to distribute, and he pled not guilty. After an adverse ruling on his motion to suppress, defendant was allowed to withdraw this plea and enter a guilty plea to attempted possession of marijuana with intent to distribute (La.R.S. 14:27 and 40:966 A) reserving his right to appeal the motion to suppress ruling. A presentence investigation was ordered and reviewed.
Defendant was subsequently sentenced to serve three years imprisonment. The sentence was suspended, and defendant was placed on supervised probation for five years subject to conditions.
Defendant appealed, claiming the trial court erred in overruling the motion to suppress and the trial judge did not properly apply the sentencing guidelines to individualize the sentence, resulting in a more *1230 severe sentence being imposed than was warranted. We affirm.

Factual Background

On December 17, 1985, at 12:19 A.M., Deputy Kindrix of the Ouachita Parish Sheriff’s Office was on routine patrol eastbound on New Natchitoches Road just outside of West Monroe. Deputy Kindrix observed defendant walking east on the shoulder of the road with a pouch in his right hand. The deputy passed defendant, turned the patrol car around and went back to the area in which he had seen defendant.
Deputy Kindrix next saw defendant walking out of the ditch at the side of the road. He was no longer carrying the pouch. The deputy exited his vehicle and asked defendant, “Where is that bag or purse you had? ”. Defendant replied, “I don’t know what you are talking about.”
Lt. Scott Rowden arrived at the scene and observed the pouch lying in the ditch approximately 10 to 12 feet from defendant. The pouch contained nine plastic bags of marijuana and three bags containing marijuana gleanings. Defendant was advised of his Miranda rights and placed under arrest. He later made several inculpa-tory statements to authorities.

Motion to Suppress

On April 7, 1986, defendant filed a motion to suppress all evidence seized as a result of his arrest on December 17, 1985. Defendant alleged that:
“1) The police officer who stopped him and arrested him did so without probable cause to believe that defendant had committed a crime or was in the process of committing a crime.
2) Defendant was questioned by the police without first being warned of his right to remain silent or of his Miranda rights.
3) Defendant did not knowingly, intelligently and voluntarily waive his right to remain silent.
In written reasons for judgment, the trial judge found that the seizure did not occur until after the pouch had been abandoned and the inculpatory statements were made after defendant had been Mir-andized. He denied the motion to suppress.
If, prior to the abandonment of the evidence, there is an unlawful intrusion into the defendant’s constitutional right to be left alone, then the evidence is unlawfully seized. An unlawful intrusion occurs when there is an actual stop without reasonable cause or when a stop without reasonable cause is imminent. The legality of a stop which occurs after an abandonment is irrelevant in determining whether the evidence must be suppressed. State v. Chopin, 372 So.2d 1222 (La.1979); State v. Ryan, 358 So.2d 1274 (La.1978); State v. Schaffer, 467 So.2d 1349 (La.App. 5th Cir.1985); State v. Valentine, 464 So.2d 1091 (La.App. 1st Cir.1985); State v. Morrison, 459 So.2d 1320 (La.App. 1st Cir.1984).
The purpose of the Fourth Amendment is not to eliminate all contact between police and the citizenry. Police officers do not need probable cause to arrest or reasonable cause to detain each time they attempt to converse with or approach a citizen. As long as the person remains free to disregard the encounter and walk away, there has been no intrusion upon that person’s liberty or privacy which would require some particularized and objective justification under the Fourth Amendment. State v. Belton, 441 So.2d 1195 (La.1983); State v. Fleming, 457 So.2d 1232 (La.App. 1st Cir.1984).
In State v. Ryan, supra, two police officers observed Ryan walking along a sidewalk clutching a yellow object in his hand. One officer testified that as they passed Ryan in their car, it appeared that Ryan was trying to conceal what he was holding by turning his hand away from the street. Their suspicions aroused, the officers circled the block and came upon Ryan still carrying the object.
One officer testified Ryan dropped the object before his partner jumped out of the car. The other officer testified that he jumped out of the car immediately after seeing that Ryan was still carrying the object. He stated that Ryan threw the *1231 object to the ground as soon as he saw the officer leave the car and start in his direction. The officer walked past Ryan and retrieved the object while his partner stopped Ryan. The object was a manila envelope containing approximately 50 heroin capsules.
The Supreme Court of Louisiana held that the motion to suppress was properly denied. The court stated:
“Even accepting [the officer’s] testimony that the package was not dropped until after he had left the car, there was no violation of [Ryan’s] rights. The officer had the right to move closer for a better view of what he considered suspicious activity; [Ryan] could not expect to carry contraband and drop it with impunity when he sees an approaching police officer. There is no expectation of privacy when property is abandoned, and no constitutional prohibition against seizure of abandoned property by police.
See also State v. Williams, 304 So.2d 311 (La.1974).
In State v. Wheeler, 416 So.2d 78 (La.1982), two officers were parked on a street writing a report. They became interested in the activities of a man standing by a wall about one-half block down the street. During a period of thirty minutes he was approached by several juveniles, each of whom handed the man something and received an item in return from a brown grocery bag near his feet. Before approaching the man, the officers summoned other police officers for assistence, instructing them to cover the suspect’s rear in case he took flight. As the officers walked down the street, the man picked up his bag, dropped it in a garbage can and walked away from them. The suspect was overtaken by one of the officers, apprehended, patted down for weapons, advised of his rights, and placed in the police vehicle. Meanwhile, the other officer retrieved the brown bag from the garbage can. It contained ten small coin envelopes and a plastic envelope containing marijuana and a number of other items.
The court held that the property was abandoned without any unlawful infringement of Wheeler’s rights and the bag was lawfully seized. The officer did not approach Wheeler in a manner or under circumstances which made it seem that some form of detention was imminent until after he disposed of the bag.
In Valentine, supra, two officers were on routine patrol at about 9:30 P.M. on October 6, 1983 when they noticed Valentine walking down the street. One of the officers noticed a small “shining object” in Valentine’s hand. As the officers passed, Valentine first tried to shield the object from view, and then he dropped it on the ground. The officers stopped the car. One officer detained Valentine while the other retrieved the object. The object was a packet of tinfoil containing two Talwin tablets.
Valentine filed a motion to suppress the tablets, arguing that an unreasonable stop was imminent before he abandoned the foil packet. The trial court denied the motion. The appellate court affirmed, stating that the evidence was abandoned prior to any detention.
In Morrison, supra, two officers were on patrol about 8:00 P.M. While stopped at an intersection they saw several males standing on the comer in front of a service station/convenience store. One of the officers noticed Morrison take an item out of his right pocket, drop it on the ground and kick it under a vehicle parked nearby. The officers drove into the station and retrieved a matchbox containing Preludin tablets.
One officer testified that he and his partner were about ten yards away and still in their car when Morrison kicked the matchbox under the vehicle. The other officer stated they were pulling into the service station when Morrison threw down the object and kicked it under the car. The officer then exited the car and detained Morrison while his partner retrieved the matchbox.
The court held that the trial judge did not err in denying Morrison’s motion to suppress the Preludin, stating:
“We do not find the officer’s conduct in the instant case to be intrusive. The officers did not even exit their car and *1232 approach [Morrison] until after he threw down his matchbox. Even accepting the testimony by [one officer] that the matchbox was thrown down when the car pulled into the station, there was no violation of [Morrison’s] rights. By just driving into the parking area of a service station/convenience store the officers did not intrude upon or restrict [Morrison’s] freedom of activity or movement.
[Morrison] could not expect to carry contraband and drop it with impunity when he saw an approaching police officer. There is no expectation of privacy when property is abandoned and no constitutional prohibition against seizure of abandoned property.
In State v. Fleming, supra, an officer was on patrol when he observed Fleming exit a car parked at an intersection. Defendant did not observe this officer but noticed another unmarked police car manned by two plainclothes policemen, and immediately threw an object which fell to the ground behind the parked car. The officer exited his vehicle in order to retrieve the object. The object turned out to be a bag containing Pentazocine.
Finding no error in the trial court’s denial of Fleming’s motion to suppress, the court stated:
“It is apparent from events surrounding this incident that the police officers did not approach [Fleming] in a manner or under circumstances which indicated that some form of detention was imminent until after [Fleming] disposed of the contraband. Thus, the property was abandoned without any unlawful infringement of [Fleming’s] rights, and, therefore lawfully seized”.
In State v. Bethley, 452 So.2d 367 (La.App. 1st Cir.1984), two police officers were on routine patrol about 8:45 P.M. As they approached an intersection, the officers saw Bethley and another man standing side by side in the middle of the block facing traffic. As their vehicle moved directly parallel to Bethley, both officers observed a matchbox fall to the ground from Beth-ley’s right hand.
One of the officers testified that he then exited the vehicle, and walked over and picked up the matchbox. The other officer confirmed that neither he nor his partner had exited their vehicle until after the matchbox had been dropped by Bethley. After alighting from the vehicle, one officer did identify himself as a policeman and ordered Bethley not to move while the other examined the contents of the matchbox.
After making a preliminary examination that the matchbox contained twenty sets of pills, half of which were Talwin, Bethley was questioned and thereafter arrested.
The First Circuit held that the trial judge’s denial of Bethley’s motion to suppress was not error, explaining:
“We do not regard the officer’s conduct in the instant case as intrusive. When they neared the [intersection], they did not intrude upon [Bethley’s] freedom of activity or movement. They did not even stop their automobile and alight until after [Bethley] threw down the matchbox.”
In State v. Gaines, 423 So.2d 111 (La.App. 4th Cir.1982), two police officers were riding near an intersection. Upon observing the officers, Gaines walked toward the street, turned and continued toward the next block. Along the way, she jettisoned a matchbox. At that point, one officer stopped the police car, allowing his partner to exit and retrieve the property. When it was discovered by the officer that the matchbox contained seven sets of “T’s and blue's”, as the contraband is known, the officers followed Gaines and arrested her in the next block.
Holding that the seizure of the contraband was not improper, the court noted:
“To affirm the suppression of evidence in this case would require this court’s holding that [the officers] intruded upon Gaines’ right to privacy by driving in her vicinity on a public street. With that proposition we can not agree.”
Defendant relies on the case of State v. Chopin, supra. That case is distinguishable from the facts of the instant situation.
*1233 In Chopin, two deputies were on routine patrol at approximately 11:38 P.M. Upon approaching an intersection, the officers observed Chopin walking along a service road carrying a brown paper bag in his hand. When Chopin noticed the patrol car, he became nervous and began to walk faster. As a result, the deputy drove past Chopin, turned his vehicle around and came back towards Chopin, hit his bright lights and stopped three to four feet in front of Chopin. At this point, Chopin ran away from the patrol car and dropped the brown paper bag. The officers pursued Chopin, caught him, and placed him under arrest. The bag was subsequently retrieved and discovered to contain marijuana.
In the instant case, defendant was observed walking along a dark stretch of rural highway carrying what appeared to be a woman’s purse. The officer’s suspicion being aroused, he decided to investigate further. The officer drove past defendant and turned his vehicle around some twenty to thirty yards down the road. He did not use his vehicle to impede defendant’s path. When the officer returned to the area, defendant was no longer walking on the side of the road but walking out of the ditch that ran alongside the highway. Defendant was no longer carrying the pouch. It was at this time that defendant was detained. The pouch had already been abandoned.
We conclude, as did the trial judge, that the pouch was abandoned prior to defendant’s detention. The pouch was, therefore, properly seized.

Excessive Sentence

Defendant has no juvenile record, and this is his first adult offense.
In imposing sentence, the trial judge considered several mitigating circumstances. Defendant was a high school graduate, and had not been a disciplinary problem while growing up or in school. Defendant also received an honorable discharge from the Army.
The trial judge also considered several aggravating circumstances. Defendant is 29 years old and is not a youthful offender. Defendant had not maintained a steady job in over two years, and has resided with several women who had supported him over the years.
The trial judge stated that this was a “very serious offense in that defendant would willingly participate in the introduction of drugs into the community”. A lesser sentence would deprecate the seriousness of the offense.
Considering the benefit defendant received from the plea bargain agreement and the seriousness of the offense, we do not find the sentence excessive.
DECREE
For the reasons set forth, defendant’s conviction and sentence are affirmed.
SEXTON, J., concurs and assigns written reasons.