518 So.2d 590 (1987)
STATE of Louisiana
v.
Gremel HARRIS.
No. KA/87/0603.
Court of Appeal of Louisiana, First Circuit.
December 22, 1987.
Writ Denied April 4, 1988.
*592 Bryan Bush, Dist. Atty., Baton Rouge by Leila Withers, Asst. Dist. Atty., for plaintiff/appellee.
M. Michele Founet, Appellate Counsel, Public Defender's Office, Baton Rouge, for defendant/appellant.
Before LOTTINGER, EDWARDS and ALFORD, JJ.
EDWARDS, Judge.
Gremel Harris was convicted of one count of armed robbery and one count of attempted armed robbery and sentenced to ninety-nine years at hard labor for the armed robbery conviction and a concurrent forty-nine and one-half years at hard labor for the attempted armed robbery conviction.[1] Defendant appealed, alleging twenty-eight assignments of error. Because, however, he briefed only eight, the remaining twenty are considered abandoned. Uniform Rules Courts of Appeal, Rule 2-12.4.

FACTS
Clara Jones, the bartender at a Baton Rouge lounge, testified that she saw defendant, whom she did not know, enter the bar, and that Earl Crum, one of the customers, addressed defendant as "Jap." Defendant then went outside, and returned almost immediately with two other men, all three of them carrying guns. According to Ms. Jones, one of the men said, "This is a hold up," one jumped behind the bar and emptied the register of about $7,500.00, and defendant took Ms. Jones' wallet from her purse and removed $35.00 cash. The robbers also took Earl Crum's wallet, though it contained no money; an unidentified customer's watch; and a small pistol that was kept behind the counter. Defendant was arrested approximately two days later, and he was convicted of the armed robbery of Clara Jones and the attempted armed robbery of Earl Crum.

SUFFICIENCY OF THE EVIDENCE
Defendant contends that the state failed to establish his identity as one of the perpetrators, and therefore that the evidence was insufficient for a conviction.[2] Ms. Jones positively identified defendant as one of the three robbers, testifying that she clearly remembered his face because of her fear during the incident.
Earl Crum testified that he and defendant had attended school together for approximately four years. He related that he was seated in the bar when he saw defendant *593 walk inside, that he recognized defendant immediately and called to him by his nickname, "Jap," but that defendant did not speak to him. Then realizing that he was in danger because defendant knew Crum could identify him, Crum said that he watched the activity behind the bar and avoided looking at defendant throughout the robbery. Nonetheless he was positive in his identification of defendant as one of the perpetrators.
Steve Follins testified that he went into the bar with defendant and Kent, and that he heard someone call defendant by his nickname when they entered the lounge. According to Follins, he stood at the door while one of the others took the money from the register, and another took the money from the bartender's purse. Follins further related that he had pled guilty to the offense and received a ten-year sentence.
For the defense, Margie Tony, who said she lived with defendant in a "common law" relationship, testified that, on April 19, 1982, the date of the offense, she and her three children went fishing with defendant, his mother, and another man whose name she did not know. She testified that they fished from approximately 7:00 a.m. until approximately 8:00 p.m., when they returned to defendant's mother's house, prepared and ate the fish, and stayed together until approximately 1:00 a.m. She initially claimed that she recalled the specific date because her children were out of school for the Easter holidays, but later said that she kept the children home from school on that date to take them fishing, their vacation having been the previous week.
Corroborating Ms. Tony's testimony, defendant's mother related that the group went fishing on that date because her mother had been particularly anxious to go. Aside from the addition of defendant's grandmother, Mrs. Harris' list of the members of the fishing party was the same as Ms. Tony's. Mrs. Harris, however, specifically disclaimed the possibility that defendant and Ms. Tony shared a common law relationship, saying that they were merely friends. According to Mrs. Harris, defendant lived with his grandmother. Essentially the same alibi testimony was given by defendant's grandmother and the mother of his ex-wife.
Defendant likewise testified that he was on a fishing trip with his mother, grandmother, Ms. Tony and her three children on the day of the robbery. Though he admitted that he was acquainted with Earl Crum, he claimed that Crum fabricated the robbery story because defendant had not paid him for some marijuana exchanged the day before. He explained Steve Follins' testimony by saying that Follins believed defendant was involved with one of his girlfriends. Defendant claimed that Ms. Jones was lying in her identification of him.
The standard of review for sufficiency of the evidence is whether any reasonable trier of fact could find that the evidence, viewed in the light most favorable to the prosecution, is sufficient to establish the elements of the offense beyond a reasonable doubt. LSA-C.Cr.P. art. 821; State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983). The state presented the testimony of two victims, both of whom positively identified him as one of the perpetrators. Defendant admitted that he had been acquainted with one of the victims for a considerable length of time. An accomplice testified that defendant participated in the robbery with him. Although defendant presented an alibi defense, the testimony of his witnesses was, on occasion, contradictory. The trier of fact can accept or reject, in whole or in part, the testimony of any witness. State v. Kennedy, 494 So.2d 550 (La.App. 1st Cir.), cert. denied, 495 So.2d 290 (La.1986). We find, therefore, that any rational trier of fact could have found the evidence presented by the state to be more credible than that presented by defendant. This assignment of error has no merit.

REFUSAL TO REPLAY TESTIMONY
Defendant claims that the trial court erred by denying his request to listen to the taped testimony of Earl Crum. While *594 admitting that he has no absolute right to review the testimony, he claims that the court's denial of his request compromised his right to present the best defense possible.
Article 843 of the Code of Criminal Procedure provides for the recordation of all proceedings in felony cases, but the purpose of this requirement is to enable a party to support assignments of error on appellate review. See LSA-C.Cr.P. art. 843, comment (c); see also State v. Robinson, 387 So.2d 1143 (La.1980). The trial court is not required to recess court proceedings to permit a party to review testimony already provided, especially where the request is apparently made for informational purposes only. Defendant did not request that the witness be recalled for further examination, and he does not even now allege a specific manner in which the review of this testimony could have been helpful.
Matters pertaining to the conduct of trial are within the sound discretion of the trial court. LSA-C.Cr.P. art. 17; State v. Williams, 442 So.2d 740 (La.App. 1st Cir. 1983). The trial court did not abuse its discretion by refusing to permit defendant to review the testimony of a witness while the trial was still proceeding. This assignment of error has no merit.

EVIDENCE OF DEFENDANT'S CRIMINAL RECORD
Defendant complains of the trial court's overruling his objection to the state's question about his criminal record, and the subsequent denial of his motion for mistrial. At a bench conference during the trial (transcribed by the court reporter to the extent possible), defendant apparently sought an in limine ruling to prevent the state from referring to a guilty plea by defendant in another matter because the plea had been overturned by the Louisiana Supreme Court. During that conference, the assistant district attorney indicated that she had no intention of introducing evidence concerning the vacated plea.
After defendant took the stand, the state asked him whether he had ever been convicted or pled guilty to a felony. Defendant objected, asked that the jury be removed, and asked for a mistrial, claiming that the state had breached its promise to refrain from questioning defendant about his criminal record. The state responded that the question was not an attempt to introduce evidence of the vacated plea, but to impeach defendant by his admission to two other felony convictions. The court instructed defendant that he was not to include the vacated plea in his response, but ruled that the question was otherwise permissible impeachment. When cross-examination resumed, the state withdrew the question before defendant could respond to it.
Defendant now argues that the state's question was within the purview of LSA-C. Cr.P. art. 770, authorizing a mistrial whenever, in the presence of the jury, a court official refers directly or indirectly to another crime committed or alleged to have been committed by the defendant for which evidence is not admissible. He claims that the fact that the state withdrew the question proves that the state was not actually attempting impeachment. Claiming that he was prejudiced despite the fact that no response was made before the jury, because the jurors were then free to assume the worst, defendant argues that if he had been permitted to answer, he could have at least explained that one of his convictions had been reversed.
These assignments of error are absolutely without merit. When a defendant takes the stand on his own behalf, the state is permitted to impeach his credibility by cross-examination about prior convictions. LSA-R.S. 15:495; see also State v. Connor, 403 So.2d 678 (La.1981); State v. Calloway, 324 So.2d 801 (La.1975). Contrary to defendant's assertion, it is clear from the record that the state did not agree it would not impeach defendant through use of his prior convictions; rather, the state agreed that evidence concerning the plea vacated on appeal would not be admissible. There is no indication whatsoever that defendant even attempted to obtain the state's agreement not to impeach *595 through the other convictions. Moreover, the fact that he did not answer the question did not result in a higher level of prejudice. Defendant did not seek to clarify the issue through redirect examination, thereby preventing the jury from assuming that he had a lengthy record. Therefore, the trial court did not err by overruling defendant's objection, or by denying his motion for a mistrial. See State v. McKeever, 407 So.2d 662 (La.1981); State v. Calloway, 324 So.2d at 809.

CHALLENGE FOR CAUSE
Defendant submits that the trial court erred by refusing his challenge for cause of a prospective juror. He claims that Mary Whittington should not have been permitted to serve on the jury because of her relationship with several law enforcement officers, and because one of her relatives had been the victim of a brutal crime.
On voir dire, Ms. Whittington testified that her brother served as an auxiliary officer with the sheriff's department, that a friend was a member of the Baker City Police Department, that her husband had been briefly employed by the civil division of the East Baton Rouge Parish Sheriff's office, and that her brother-in-law had recently retired from the civil division of the sheriff's office. Ms. Whittington candidly testified that she would be likely to give great credence to testimony by her brother, but that her trust, in that instance, would be due to their relationship, rather than to his employment. She testified that none of the other relationships would affect her decision as to defendant's guilt or innocence.
Ms. Whittington also related that her mother's brother-in-law, was the victim of a kidnapping, robbery, and murder approximately two years before the instant trial. She testified, however, that the incident occurred in Arkansas, and that she had not attended the trial which had resulted in a conviction.
The state or the defendant may challenge a juror for cause on the ground that:
* * * * * *
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence.
LSA-C.Cr.P. art. 797.
The trial judge is vested with broad discretion in ruling on a challenge for cause, and his ruling will not be disturbed on appeal without a showing of abuse of discretion. State v. Valentine, 464 So.2d 1091 (La. App. 1st Cir.), cert. denied, 468 So.2d 572 (La.1985).
Ms. Whittington specifically testified that she would be able to accept and apply the principles of law given by the trial court. Her responses do not indicate partiality, and defendant has not shown that she was other than a fair and conscientious juror. The trial court did not abuse its discretion in denying defendant's challenge for cause.

EXCESSIVE SENTENCE
Defendant contends his sentence is excessive, and that the court failed to comply with the sentencing criteria of article 894.1 of the Code of Criminal Procedure. He complains that the trial court failed to consider as mitigating factors his youth, the fact that he lives with his 91-year-old grandmother, that he had four alibi witnesses, and that the state failed to establish the elements of the offense beyond a reasonable doubt.
Initially, we note that defendant's argument comparing the length of the sentence to the sufficiency of the evidence is not well-founded. The jury convicted defendant of armed robbery and attempted armed robbery; the trial court sustained the convictions over defendant's motion for a post-verdict judgment of acquittal. Defendant's guilt having been established, the trial court is not required to reweigh the sufficiency of the evidence as a sentencing factor.
*596 Likewise without merit is his claim that the trial court failed to consider applicable mitigating factors. The fact that several witnesses provided an alibi for defendant is not a mitigating factor to be considered in the imposition of sentence. Nor, in this instance, is the fact that defendant occasionally resided with his grandmother, since there was no evidence that she was dependent upon him for support and would suffer as a result of his incarceration.
Contrary to defendant's claim, the trial court did specifically consider that defendant was only twenty-three years old in determining the sentence. Noting that defendant's extensive juvenile record indicated that he had dedicated himself as a youth to a criminal career, the court opined that the mitigating factor of defendant's youth was not sufficient to overcome the aggravating nature of the offense. Moreover the court emphasized that though he was classified as a first felony offender, defendant had a lengthy criminal record, including two arrests for simple battery, arrests for aggravated battery and resisting arrest, and a total of seven arrests for armed robbery (including four guilty pleas vacated by the Louisiana Supreme Court and remanded for further proceedings). The court also considered the fact that defendant committed at least one armed robbery while on bond from a prior arrest for the same offense. Finally, the court noted the likelihood that defendant's conduct in the instant offense could have resulted in injury to others.
The trial court has wide discretion in the imposition of sentences, and a sentence within statutory limits will not be vacated unless it is shown to be an abuse of that discretion. State v. Wardlow, 448 So.2d 257 (La.App. 1st Cir.1984). Considering defendant's lengthy criminal history and the seriousness of this offense, we find no abuse of discretion.

COMPETENCY TO STAND TRIAL
Defendant contends that the trial court erred in finding him competent to stand trial. The record before us does not contain a motion to appoint a sanity commission in this matter. However, on September 29, 1982, the trial court ordered that charges pending on three separate bills be consolidated for the purpose of determining defendant's competency to stand trial, and a hearing was conducted on that date. Therefore, despite the fact that no motion to appoint a sanity commission is of record, we will review defendant's assignment of error as though such a motion had been filed.
At the sanity hearing, Dr. Francisco Silva, a practicing psychiatrist, testified that he examined defendant three times in the year preceding the hearing, most recently three days earlier. He determined that defendant could assist counsel and communicate well, and that defendant had a good understanding of the nature of the proceedings and the roles of the parties. Dr. Silva found no evidence of psychosis or any serious problem that would compromise defendant's ability to assist counsel or participate in the trial.
Dr. Hypolite Landry, coroner of East Baton Rouge Parish, testified that in his examination, defendant provided a history of drug and alcohol abuse but did not show symptoms of a mental illness. Determining that defendant was able to assist counsel and understand the nature of the charges, Dr. Landry also concluded that defendant was competent to stand trial.
Defendant's mother testified that defendant's childhood had been normal until he was fifteen, when he was accidentally shot in the mouth with a shotgun. She related his medical history stemming from this incident, including various tests to pinpoint the location of the shell, still lodged within defendant's body. She further told of several incidents of defendant's bizarre behavior in the years following the shooting, including two suicide attempts.
Defendant argues that the evidence of his drug abuse, physical injury, and previous suicide attempts indicates that he was not competent to stand trial. He concludes that the examinations performed by the doctors of the sanity commission were incomplete because the doctors failed to obtain *597 his medical records indicating the nature of his head injury.
"Mental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense." LSA-C.Cr.P. art. 641; State v. Beauchamp, 510 So.2d 22 (La.App. 1st Cir.1987). Sanity, including mental capacity to proceed, is presumed. LSA-R.S. 15:432; State v. Edwards, 257 La. 707, 243 So.2d 806 (1971). Defendant has the burden of proving by a clear preponderance of the evidence that as a result of a mental disease or defect he lacks the capacity to understand the proceedings against him or to assist in his defense. State v. Bennett, 345 So.2d 1129 (La.1977). The judge's determination of a defendant's present mental capacity is entitled to great weight, and his ruling will be reversed only if it is clearly erroneous. Id.
The trial court did not err in finding defendant competent to proceed with trial. The expert testimony presented by the state was overwhelmingly in favor of such a finding. Both doctors specifically testified that, at that time, defendant did not indicate in any manner that he was suffering from a disability affecting his ability to assist in conducting a defense.
Defendant also argues that the trial court erred by abdicating its responsibility to determine defendant's competency and relied, instead, solely upon the expert testimony. While a thorough mental examination is necessary, the final determination of a defendant's competency to stand trial must rest in a judicial authority; it is a legal, rather than a medical, issue. State v. Qualls, 377 So.2d 293 (La.1979). The trial judge should not rely so heavily upon the medical testimony that he commits the ultimate decision of competency to the physician. Id.
In finding that defendant was competent to stand trial, the court noted that its decision was based on the expert testimony. However, we do not agree that the trial court abandoned its authority and committed the ultimate decision to the doctors. Throughout the sanity proceedings, the trial court allowed defendant a large measure of leniency, permitting him to explore every conceivable aspect of competency (including a hypothetical situation based on facts presented by defendant's mother) before arriving at its ultimate conclusion. Thus, the court did not abdicate its responsibility to determine the issue. This assignment of error has no merit.

ISSUANCE OF SUBPOENAS
Finally defendant submits that the trial court erred in denying his motion to recess the sanity hearing and issue a subpoena duces tecum to obtain his medical records, which he claims resulted in denying him the opportunity to prove his true mental condition. Although the court said that it would issue such a subpoena for trial purposes, it did not believe that those medical records were relevant to the issue of defendant's competence to stand trial.
Defendant argues that he was entitled to the production of the documents under the provisions of article 647 of the Code of Criminal Procedure, which states that "evidence pertaining to the defendant's mental capacity to proceed may be introduced at the hearing by the defense."[3] Nonetheless the court was already aware of defendant's traumatic injury. Assuming, as defendant claimed, that headaches, dizziness, and occasional bizarre behavior resulted from that injury, these symptoms alone do not establish that defendant suffered from such a mental disability that would make him incompetent to stand trial. Moreover, competency to stand trial does not turn solely upon whether the defendant suffers from a mental disease or defect; the decision must be made with specific reference to the nature of the charge, the complexity of the case, and the gravity of *598 the decisions defendant must face at trial. State v. Qualls, 377 So.2d at 298.
None of the evidence presented at the hearing, including the testimony of defendant's mother, indicated that the problems suffered by defendant prevented him from understanding the nature of the proceedings, communicating with counsel, or assisting in the preparation for or conduct of his defense. Thus defendant was not entitled to the production of the records under article 647, and the court did not err by refusing to recess the proceedings until the records could be provided. See State v. Phillips, 465 So.2d 794 (La.App. 4th Cir. 1985).
For the foregoing reasons, defendant's convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] Although the trial court specifically noted in its reasons for the imposition of sentence that no type of suspended sentence is available following a conviction for armed robbery, it did not actually direct that the sentences be served without benefit of probation, parole or suspension of sentence, and thus they are illegally lenient. Yet this court cannot amend or remand for correction of an illegally lenient sentence since only the defendant has appealed. See State v. Fraser, 484 So.2d 122 (La.1986). Upon application by the state, however, the trial court can amend an illegal sentence at any time, even after the defendant has begun serving the sentence. LSA-C.Cr.P. art. 882.
[2] Defendant filed a motion for a post-verdict judgment of acquittal, which was denied by the trial court. On appeal, defendant does not claim that the trial court erred by denying the motion; he simply argues that the evidence was not sufficient. Despite defendant's failure to address the issue properly, we will consider this argument as though his claim has been correctly presented.
[3] Defendant does not actually argue that the trial court erred by refusing to issue the subpoena duces tecum; rather, he claims that the evidence was relevant to the issue of his mental capacity and should have been produced.